NO. 12-30714

# In the United States Court of Appeals
# For the Fifth Circuit

HALEIGH JANEE MCBRIDE, INDIVIDUALLY AND ON BEHALF OF I M S,
*Plaintiff-Appellant,*

v.

ESTIS WELL SERVICE, L.L.C.,
*Defendant-Appellee*

* * *

BRIAN J. SUIRE,
*Plaintiff-Appellant,*

v.

ESTIS WELL SERVICE, L.L.C.,
*Defendant-Appellee,*

* * *

SAUL C. TOUCHET,
*Plaintiff-Appellant,*

v.

ESTIS WELL SERVICE, L.L.C.,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Louisiana
Lafayette-Opelousas Division – No. 6:11-cv-00557 (LEAD)

BRIEF OF *AMICI CURIAE* THE OFFSHORE MARINE SERVICE ASSOCIATION,
THE INTERNATIONAL ASSOCIATION OF DRILLING CONTRACTORS, AND
THE AMERICAN WATERWAYS OPERATORS IN SUPPORT OF
APPELLEE ESTIS WELL SERVICE, L.L.C., FOR AFFIRMANCE
OF THE JUDGMENT OF THE DISTRICT COURT

Lynne Liberato
William Feldman
HAYNES AND BOONE, LLP
1221 McKinney, Suite 2100
Houston, Texas 77010-2007
Telephone: (713) 547-2000
Telecopier: (713) 547-2600

Jeffrey R. Bale
Lewis Henderson
THE BALE LAW FIRM, PLLC
1600 Highway 6 South, Suite 200
Sugar Land, Texas 77478
Telephone: 281-295-6000
Telecopier: 281-295-6010

## SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualifications or recusal.

*Amici Curiae*

1. The Offshore Marine Service Association

2. The International Association of Drilling Contractors

3. The American Waterways Operators

4. Counsel for *Amici Curiae*:

    a. Lynne Liberato and William Feldman (Haynes and Boone, LLP)

    b. Jeffrey R. Bale and Lewis E. Henderson (The Bale Law Firm, PLLC)

Pursuant to Rule 26.1(a) and Fifth Circuit Rule 29.2, I hereby certify that I am aware of no persons or entities, in addition to those listed in the party briefs, that have a financial interest in the outcome of this litigation; and no *amicus curiae* on this brief has a parent corporation; and that no publically held corporation owns ten percent (10%) or more of the stock of any *amicus curiae* on this brief.

_/s/ Lynne Liberato_

Lynne Liberato
Counsel for _Amici Curiae_
The Offshore Marine Services
Association, The International
Association of Drilling Contractors, and
The American Waterways Operators.

# TABLE OF CONTENTS

SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS........................ i

TABLE OF CONTENTS........................................................................ iii

TABLE OF AUTHORITIES ................................................................iv

INTEREST OF *AMICI CURIAE*..........................................................1

INTRODUCTION ...............................................................................2

ARGUMENT.......................................................................................3

I.    Punitive damages will significantly complicate and prolong
      unseaworthiness claims....................................................................3

II.   The Court should recognize the need for national and
      transnational uniformity in maritime law .......................................6

III.  Punitive damages will neither punish nor deter .............................9

CONCLUSION AND PRAYER...........................................................10

CERTIFICATE OF SERVICE.............................................................12

CERTIFICATE OF COMPLIANCE....................................................13

# TABLE OF AUTHORITIES

<u>CASES</u>

*Ainsworth v. Caillou Island Towing Co.*,
No. 13-0688, 2013 WL 6044376 (E.D. La. Nov. 14, 2013)...............................3

*Atlantic Sounding Co. v. Townsend*,
557 U.S. 404 (2009)...................................................................................5, 6, 9

*Bell v. Hercules Offshore, Inc.*,
Cause No. 2013-10648 (269th Judicial District Court, Harris
County, Texas)................................................................................................3

*Cabral v. AET Offshore Servs., Inc.*,
Cause No. 2013-02744 (133d Judicial District Court, Harris
County, Texas)................................................................................................3

*Clausen v. Icicle Seafoods, Inc.*,
No. 85200-6 (Wash. Mar. 15, 2012) ...............................................................4

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*,
532 U.S. 424 (2001).........................................................................................9

*Cumberland v. Isthmian Lines, Inc.*,
282 F. Supp. 217 (E.D. La. 1967) ...................................................................5

*Exxon Shipping Co. v. Baker*,
554 U.S. 471 (2008).........................................................................................8

*Frazier v. Transocean Drilling (U.S.A.) Inc.*,
Cause No. 2013-37548 (295th Judicial District Court, Harris
County, Texas)................................................................................................3

*Garner v. Hercules Offshore, et al.*,
Cause No. 2012-48687 (125th Judicial District Court, Harris
County, Texas)................................................................................................3

*Hackensmith v. Port City S.S. Holding Co.*,
938 F. Supp. 2d 824 (E.D. Wis. 2013) ...........................................................6

*Horsley v. Mobil Oil Corp.*,
15 F.3d 200 (1st Cir. 1994) .............................................................................6

*Johnson v. Offshore Express, Inc.*,
  845 F.2d 1347 (5th Cir. 1988), *cert. denied*, 488 U.S. 968 (1988)......................5

*Keel v. Greenville Mid-Stream Service, Inc.*,
  321 F.2d 903 (5th Cir. 1963)..........................................................................5

*The Lottawanna*,
  88 U.S. (21 Wall.) 558 (1874)........................................................................7

*Miles v. Apex Marine Corp.*,
  498 U.S. 19 (1990)...............................................................................7, 9, 10

*Miller v. Am. President Lines, Ltd.*,
  989 F.2d 1450 (6th Cir. 1993)......................................................................10

*Moragne v. States Marine Lines, Inc.*,
  398 U.S. 375 (1970).........................................................................................7

*Norfolk S. Ry. Co. v. Kirby*,
  543 U.S. 14 (2004)...........................................................................................7

*The Osceola*,
  189 U.S. 158 (1903).........................................................................................8

*Penrod Drilling Corp. v. Williams*,
  868 S.W.2d 294 (Tex. 1993)...........................................................................6

*Peters v. Hercules Offshore Inc.*,
  Cause No. 2012-20719 (129th Judicial District Court, Harris
  County, Texas)..................................................................................................3

*Phillips v. Western Co. of North America*,
  953 F.2d 923 (5th Cir. 1992)...........................................................................5

*Ponder v. M/V Chilbar*,
  234 F. Supp. 2d 1355 (S.D. Ga. 2002) ............................................................6

*Szymanski v. Columbia Transp. Co.*,
  154 F.3d 591 (6th Cir. 1998)...........................................................................6

*United States v. Reliable Transfer Co.*,
  421 U.S. 397 (1975).........................................................................................8

*Use v. Hercules Offshore, Inc. et al.*,
   Cause No. 2013-22963 (189th Judicial District Court, Harris
   County, Texas)..................................................................................3

*Usner v. Luckenbach Overseas Corp.*,
   400 U.S. 494 (1971)...........................................................................5

*Yarborough v. Hercules Offshore Inc.*,
   Cause No. 2012-13603 (333d Judicial District Court, Harris
   County, Texas)..................................................................................3

STATUTES AND RULES

U.S. CONST. art. III, § 2............................................................................7

46 U.S.C. § 10908....................................................................................9

46 U.S.C. § 30303..................................................................................10

FED. R. APP. P. 29 ...................................................................................1

FED. R. APP. P. 29(c)(5) .........................................................................1

TREATISE

1 Stein on Personal Injury Damages § 4:29 (3d ed.)...............................6

SECONDARY SOURCES

Katie S. Cordes, *McBride's Immediate Effect on Punitive Damages in
   Unseaworthiness Actions*,
   *available at* http://www.martindale.com/government/article_Jones-
   Walker- LLP_2046670.htm ..............................................................4

Geoffrey L. Wendt, *The Fog of Uncertainty Enshrouding Employer
   Punitive Damage Liability Under General Maritime Law*,
   2 MARITIME L. BULL. 100 (2010) ......................................................7

Thomas M. DiBiagio, *Fostering Uniform Substantive Law and
   Recovery—The Demise of Punitive Damages in Admiralty and
   Maritime Personal Injury and Death Cases*,
   25 U. BALT. L. REV. 1 (1995) .............................................................7

John Y. Gotanda, *Charting Developments Concerning Punitive Damages: Is the Tide Changing?*
45 COLUM. J. TRANSNAT'L L. 507 (2007)..........................................................8

# INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* The American Waterways Operators ("AWO"), the Offshore Marine Service Association ("OMSA"), and the International Association of Drilling Contractors ("IADC"), through their undersigned counsel, respectfully submit this Brief of *Amici Curiae* in support of Appellee Estis Well Service, L.L.C.'s En Banc Brief on the Merits pursuant to Federal Rule of Appellate Procedure 29. All parties have consented to the filing of this brief.

*Amicus* AWO represents the inland and coastal tugboat, towboat and barge industry. *Amicus* OMSA represents the offshore marine transportation service industry. *Amicus* IADC represents drilling contractors active in offshore exploration and production oil and gas. All *amici* represent companies that are Jones Act employers engaged in maritime operations that relate to the energy and marine industries in various ways.

*Amici* are interested in the issues before the Court as their members are each routinely involved in defending Jones Act and general maritime law litigation. The issue presented by Appellee seeks to correct an erosion of long-accepted and well understood maritime principles. As discussed herein, allowing the recovery of punitive damages in unseaworthiness personal injury cases would result in baseless

---

[1]    Pursuant to Federal Rule of Appellate Procedure 29(c)(5), the undersigned counsel states that no counsel for any party had a role in authoring this *amici* brief and that no party, counsel for any party, or person—other than *amici*, their members, and their counsel—contributed money that was intended to fund preparation or submission of this *amici* brief.

allegations of unseaworthiness, protracted litigation costs and pay outs of meritless awards by the *amici*'s members. Accordingly, *amici* respectfully ask this Court to rule in favor of Appellee.

## INTRODUCTION

For well over a century, punitive damages have been beyond the scope of recovery for a seaman injured by an unseaworthy vessel. Consistent with that long-standing principle, seamen have been able to pursue unseaworthiness claims and obtain compensation for their injuries without the need for protracted litigation. Appellants seek to change all of that. Relying on a decision of the United States Supreme Court in the entirely different context of maintenance and cure, Appellants now maintain that this Court must depart from decades of consistent precedent and dramatically alter how unseaworthiness claims are litigated. As Appellee's brief on the merits makes clear, there is no legal basis whatsoever for the Appellants' argument.

*Amici* submit this brief not to reiterate those points, but to discuss the significant implications of the dramatic change that Appellants advocate. If Appellants' position is adopted, it will change the course and duration of litigation, hobble settlement practice, and create conflict and inconsistency among jurisdictions, both at home and abroad. Moreover, allowing the recovery of punitive damages for claims of unseaworthiness would serve neither to deter nor

punish wrongdoing. This Court should reject Appellants' arguments and reaffirm its existing precedent.

## ARGUMENT

### I.    Punitive damages will significantly complicate and prolong unseaworthiness claims.

Make no mistake: the availability of punitive damages will significantly prolong and complicate the resolution of otherwise routine unseaworthiness claims, and will have a chilling effect on vessel owners' ability to defend against meritless lawsuits.

This is not an "unlikely prediction," as Appellants assert (Br. at 36), but rather an unfortunate reality of modern litigation. Indeed, in just the few months since the panel issued its decision in this case, several plaintiffs' attorneys have already amended their Jones Act lawsuits to add a demand for punitive damages based on unseaworthiness due to alleged "willful and wanton misconduct," and "gross negligence, actual malice or criminal indifference," even where the facts as pled did not support such allegations.[2] Indeed, as one recent report confirms, "[i]n

---

[2]    *See, e.g.*, *Yarborough v. Hercules Offshore Inc.*, Cause No. 2012-13603 (333d Judicial District Court, Harris County, Texas); *Peters v. Hercules Offshore Inc.*, Cause No. 2012-20719 (129th Judicial District Court, Harris County, Texas); *Ainsworth v. Caillou Island Towing Co.*, No. 13-0688, 2013 WL 6044376, at *2 (E.D. La. Nov. 14, 2013); *see also Bell v. Hercules Offshore, Inc.*, Cause No. 2013-10648 (269th Judicial District Court, Harris County, Texas); *Use v. Hercules Offshore, Inc. et al.*, Cause No. 2013-22963 (189th Judicial District Court, Harris County, Texas); *Garner v. Hercules Offshore, et al.*, Cause No. 2012-48687 (125th Judicial District Court, Harris County, Texas); *Frazier v. Transocean Drilling (U.S.A.) Inc.*, Cause No. 2013-37548 (295th Judicial District Court, Harris County, Texas); *Cabral v. AET Offshore Servs., Inc.*, Cause No. 2013-02744 (133d Judicial District Court, Harris County, Texas).

the aftermath of *McBride*, the plaintiffs are amending their complaints in hopes of receiving a windfall in punitive damages based on unseaworthiness."[3] And, as recent post-*Atlantic Sounding* experience has demonstrated in the context of maintenance and cure claims, punitive damage awards may be quite lucrative.[4] Given the potential for such a large recovery, it is naïve to believe that attorneys will not routinely include a demand for punitive damages in unseaworthiness claims, whether or not warranted under the facts.

These routine requests for punitive damages will have dramatic effects on the resolution of unseaworthiness claims. Once punitive damages are pled, the cost of defending Jones Act litigation—which invariably includes allegations of unseaworthiness—will significantly increase. Vessel owners will conduct otherwise needless discovery to guard against the specter of punitive damages. Plaintiffs, too, will undoubtedly conduct more discovery in an effort to prove the "willful and wanton" disregard necessary to support a punitive damages award.

At the same time, vessel owners will be less willing to risk defending against meritless claims. Although unseaworthiness is a strict liability cause of action, it is

---

[3]    Katie S. Cordes, *McBride's Immediate Effect on Punitive Damages in Unseaworthiness Actions*, *available at* http://www.martindale.com/government/article_Jones-Walker-LLP_2046670.htm (last visited May 1, 2014).

[4]    *See Clausen v. Icicle Seafoods, Inc.*, No. 85200-6 (Wash. Mar. 15, 2012) (affirming award of $1.3 million in punitive damages for maintenance and cure claim where actual damages were only $37,420).

not without defenses.[5] A rule permitting the recovery of punitive damages for claims of unseaworthiness will undoubtedly have a chilling effect on the assertion of such valid defenses. Vessel owners may ultimately choose to pay out unseaworthiness claims even when they appear meritless. The result: a higher number of uncontested unseaworthiness claims, and higher unwarranted costs for vessel owners. Likewise, baseless allegations of unseaworthiness will result in inflated settlement demands, rendering such allegations a newly-found expedient rather than an assertion of a meritorious claim made in good faith. And, because punitive damages are excluded under most insurance policies, underwriters will be forced to settle cases at a premium that should otherwise be defended to avoid leaving their assureds exposed to significant non-covered damage awards.

If Appellants' position is adopted, plaintiffs' attorneys routinely will seek punitive damages for unseaworthiness, whether justified or not, as they have done in maintenance and cure cases ever since the Supreme Court's decision in *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404 (2009). Claims for punitive damages

---

[5]   For example, there is a more demanding standard of proximate causation for an unseaworthiness claim than for a Jones Act claim. *Phillips v. Western Co. of North America*, 953 F.2d 923 (5th Cir. 1992). In an unseaworthiness claim, the plaintiff must establish the requisite proximate cause by proving that the unseaworthy condition played a substantial part in bringing about the injury, and that the injury was a direct result or a reasonably probable consequence of the unseaworthy condition. *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988), *cert. denied*, 488 U.S. 968 (1988). Additionally, a seaman cannot recover for a temporary unseaworthy condition created solely by his own negligence, *Keel v. Greenville Mid-Stream Service, Inc.*, 321 F.2d 903 (5th Cir. 1963), *Cumberland v. Isthmian Lines, Inc.*, 282 F. Supp. 217, 222 (E.D. La. 1967), or an isolated act of negligence of a third party. *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499-500 (1971).

under the general maritime law will ultimately become the norm and not the exception that they once were, reserved for only the most egregious, outlandish and shocking of actions.

## II.    The Court should recognize the need for national and transnational uniformity in maritime law.

In seeking to allow the recovery of punitive damages for personal injury claims founded on unseaworthiness, Appellants invite this Court to create a remedy not before recognized by the Supreme Court, by other circuit courts, or for that matter, by other nations.[6] This Court should reject the invitation to sail into uncharted waters.

This Court should be particularly mindful of the jurisdictional incongruity that would be created if it were to become the first to permit the award of punitive damages for personal injury unseaworthiness claims. Such incongruity is entirely irreconcilable with the "constitutionally based principle that federal admiralty law should be a system of law coextensive with, and operating uniformly in, *the whole*

---

[6]    *See, e.g., Szymanski v. Columbia Transp. Co.*, 154 F.3d 591, 596 (6th Cir. 1998); *Horsley v. Mobil Oil Corp.*, 15 F.3d 200, 203 (1st Cir. 1994); *Hackensmith v. Port City S.S. Holding Co.*, 938 F. Supp. 2d 824 (E.D. Wis. 2013); *Ponder v. M/V Chilbar*, 234 F. Supp. 2d 1355, 1358 (S.D. Ga. 2002); *see also Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296-97 (Tex. 1993). A leading treatise continues to support the viability of these decisions. *See* 1 Stein on Personal Injury Damages § 4:29 (3d ed.) (stating that "courts have generally denied the availability of punitive damages" in "actions brought under general maritime law for unseaworthiness," and that the Texas Supreme Court's decision in *Penrod Drilling Corp.* is "supported by other decisions"). Appellants maintain that the existing decisions on this topic are no longer good law simply because they were issued before *Atlantic Sounding*, but that is true only if one accepts Appellants' erroneous interpretation of *Atlantic Sounding*. Those decisions remain valid precedent unless and until the court rules otherwise.

*country*."[7] Indeed, *amici* depend on uniform and ascertainable maritime standards given the inherently multi-jurisdictional nature of maritime commerce, and should not be exposed to significantly greater liability in the Port of New Orleans than in the Port of New York.[8] Without such uniform standards, commentators concur that "shipowners [will be] unable to adequately forecast their exposure to punitive damages," and thus will be "exposed to differing levels of liability depending upon the federal appellate jurisdiction that their vessel happens to fall under on any given voyage."[9] Such a system is entirely inconsistent with the goal of a uniform national maritime law contemplated by the Constitution.[10]

Furthermore, a ruling in Appellants' favor will further distinguish U.S. maritime law from the maritime law of other nations. American maritime law

---

[7]   *Miles v. Apex Marine Corp.*, 498 U.S. 19, 27 (1990) (quoting *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 402 (1970)); *see also* U.S. CONST. art. III, § 2, cl. 1 (extending judicial power to "all Cases of admiralty and maritime Jurisdiction"); *The Lottawanna*, 88 U.S. (21 Wall.) 558, 575 (1874).

[8]   Geoffrey L. Wendt, *The Fog of Uncertainty Enshrouding Employer Punitive Damage Liability Under General Maritime Law*, 2 MARITIME L. BULL. 100, 100 (2010) ("The maritime industry needs a uniform and ascertainable standard because of the national and international nature of maritime commerce."); *see also Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 25 (2004) ("[T]he fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce.") (citation and internal quotation marks omitted).

[9]   Wendt, MARITIME L. BULL. at 100; *see also* Thomas M. DiBiagio, *Fostering Uniform Substantive Law and Recovery—The Demise of Punitive Damages in Admiralty and Maritime Personal Injury and Death Cases,* 25 U. BALT. L. REV. 1, 27-28 (1995).

[10]   U.S. CONST. art. III, § 2; *see Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 28 (2004) ("Article III's grant of admiralty jurisdiction must have referred to a system of law coextensive with, and operating uniformly in, the whole country.") (citation and internal quotation marks omitted).

already offers more generous relief than does the law of most other nations,[11] and allowing the recovery of punitive damages awards for unseaworthiness personal injury claims will only further deepen that disparity. As a result, international vessel owners will not only face increased uncertainty while operating within this country (and more particularly, within this jurisdiction), but will also face the increased risk of transoceanic forum shopping by injured seamen—a particular concern in maritime law.[12] The fact that few, if any, other nations allow the recovery of punitive damages in maritime law further counsels against their expansion at home.[13]

Consistent with the goal of national and international uniformity in maritime law, this Court should continue to apply the current understanding of the law unless and until the Supreme Court explicitly rules otherwise.

---

[11] Indeed, the Supreme Court recently noted that "punitive damages overall are higher and more frequent in the United States than they are anywhere else." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 496 (2008); *see also* John Y. Gotanda, *Charting Developments Concerning Punitive Damages: Is the Tide Changing?* 45 COLUM. J. TRANSNAT'L L. 507, 514, 518, 528 (2007). The *Exxon Shipping* Court described the extremely limited circumstances in which punitive damages are awardable in the United Kingdom, and the absence of punitive damages awards in countries like Italy, France, Germany, Austria, Switzerland, and Japan. 554 U.S. at 496-97.

[12] *See United States v. Reliable Transfer Co.*, 421 U.S. 397 (1975) (warning against "transoceanic forum shopping" in the context of maritime law).

[13] This court, like the Supreme Court, should look to the laws of other nations for guidance in declaring this country's maritime law. *See, e.g.*, *The Osceola*, 189 U.S. 158, 168-69, 172 (1903); *Reliable Transfer Co.*, 421 U.S. at 403-04, 407.

## III.    Punitive damages will neither punish nor deter.

Appellants have gone to great lengths to criticize the various policy points raised in *amici*'s previous submission (Br. at 36-42), but nowhere in their own fifty-page brief do they offer any policy reasons to support their position. Their failure to do so only further undermines their argument.

Aside from the obvious—increased damages and larger fees for plaintiffs' attorneys—there is no particular policy reason why this Court should change well-established precedent. Punitive damages are intended to punish an offender and deter future wrongdoing,[14] but there is little indication that such damages would further either of those objectives here. Rather, the strict liability nature of unseaworthiness claims already provides a substantial deterrent effect, as does the significant body of federal and state regulations governing the shipping industry— as the Supreme Court has recognized, "Congress and the States have legislated extensively in these areas."[15] Federal law, for example, already imposes criminal penalties on those who knowingly send an unseaworthy vessel to sea.[16] Moreover, there is simply no need for additional deterrence. It is difficult to imagine a circumstance in which a vessel owner would stand to gain financially by recklessly

---

[14]    *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001).

[15]    *Atlantic Sounding*, 557 U.S. at 420; *see also Miles*, 498 U.S. at 27.

[16]    46 U.S.C. § 10908 ("A person that knowingly sends or attempts to send, or that is a party to sending or attempting to send, a vessel of the United States to sea, in an unseaworthy state that is likely to endanger the life of an individual, shall be fined not more than $1,000, imprisoned for not more than 5 years, or both.").

operating a vessel in an unseaworthy condition, as doing so would only undermine the success of the voyage.

Furthermore, any punishment imposed by punitive damages would be arbitrary at best. If Appellants' position were adopted, punitive damages could be available to those seamen *injured* on the job due to unseaworthiness but not to those seamen *killed* by the same or an even more egregious condition.[17] Similarly, those seamen injured *non-fatally* due to unseaworthiness within territorial waters could recover punitive damages, whereas those injured *fatally* more than three nautical miles offshore—where DOSHA applies—would not.[18] Such arbitrary punishment serves no rational purpose.

Because punitive damages would serve neither to deter nor punish, this Court should decline to allow such damages to be recovered for claims of unseaworthiness.

## CONCLUSION AND PRAYER

For the foregoing reasons, this Court should affirm the judgment of the district court.

---

[17]  *See Miles*, 498 U.S. at 32-33.

[18]  46 U.S.C. § 30303; *see also Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450, 1457 (6th Cir. 1993) ("The Death on the High Seas Act explicitly limits recovery to pecuniary losses, and does not provide for punitive damages.").

Respectfully submitted,

HAYNES AND BOONE, LLP

*/s/ Lynne Liberato*

Lynne Liberato
William Feldman
1221 McKinney, Suite 2100
Houston, Texas  77010-2007
Telephone: (713) 547-2000
Telecopier: (713) 547-2600

Jeffrey R. Bale
Lewis Henderson
THE BALE LAW FIRM, PLLC
1600 Highway 6 South, Suite 200
Sugar Land, Texas  77478
Telephone: 281-295-6000
Telecopier: 281-295-6010

Counsel for *Amici Curiae*
The Offshore Marine Services
Association, The International
Association of Drilling Contractors,
and The American Waterways Operators.

# CERTIFICATE OF SERVICE

The undersigned certifies that on this 6th day of May 2014, a copy of the attached *Brief of Amici Curiae* was electronically transmitted to the United States Court of Appeals for the Fifth Circuit using the Court's ECF filing system and was served on the following parties via (i) electronic notice pursuant to the Court's ECF filing system, or (ii) by United States first class mail, postage prepaid, to the persons who do not receive electronic notice pursuant to the Court's ECF filing system:

*Counsel for Plaintiffs-Appellants Haleigh Janee McBride, Individually and on Behalf of I M S, Saul Touchet, and Brian J. Suire:*

David W. Robertson
727 East Dean Keeton Street
Austin, Texas  78705

*Counsel for Plaintiffs-Appellants Haleigh Janee McBride, Individually and on Behalf of I M S:*

Brian C. Colomb
DOMENGEAUX WRIGHT ROY
   & EDWARDS, LLC
556 Jefferson Street, Suite 500
Lafayette, LA  70501

*Counsel for Plaintiff-Appellant Brian J. Suire:*

Elwood C. Stevens, Jr.
DOMENGEAUX WRIGHT ROY
   & EDWARDS, LLC
556 Jefferson Street, Suite 500
Lafayette, LA  70501

*Counsel for Plaintiff-Appellant Saul Touchet:*

Nicholas A. Blanda
ANDERSON, DOZIER & BLANDA
2010 W. Pinhook Road
Lafayette, LA  70508

Russell S. Post
Chad Flores
BECK | REDDEN, LLP
1221 McKinney, Suite 4500
Houston, TX  77010

*Counsel for Defendant-Appellee Estis Well Service, L.L.C.:*

Alan K. Breaud
Timothy W. Basden
Andrew H. Meyers
BREAUD & MEYERS
P.O. Box 3448
Lafayette, LA  70502

*Counsel for Kenneth G. Engerrand, Pro Se:*

Kenneth G. Engerrand
1177 West Loop South, 10th Floor
Houston, Texas  77027-9007

/s/ Lynne Liberato
Lynne Liberato

## CERTIFICATE OF COMPLIANCE
## <u>FED. R. APP. P. 32(a)</u>

1.     This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because:

■     this brief contains <u>2,733</u> words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

■     this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2000 in 14 point Times New Roman font.

Dated:  May 6, 2014.


*/s/ Lynne Liberato*
Lynne Liberato
Counsel for *Amici Curiae*
The Offshore Marine Services
Association, The International
Association of Drilling Contractors,
and The American Waterways Operators

H-1035785.4