# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

—————

No. 12-30714

—————

United States Court of Appeals
Fifth Circuit

**FILED**

September 25, 2014

Lyle W. Cayce
Clerk

HALEIGH JANEE MCBRIDE, individually & on behalf of I. M. S.,

     Plaintiff - Appellant

v.

ESTIS WELL SERVICE, L.L.C.,

     Defendant - Appellee

_____

BRIAN J. SUIRE,

     Plaintiff - Appellant

v.

ESTIS WELL SERVICE, L.L.C.,

     Defendant - Appellee

_____

SAUL C. TOUCHET,

     Plaintiff - Appellant

v.

ESTIS WELL SERVICE, L.L.C.,

     Defendant - Appellee

No. 12-30714

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

Before STEWART, Chief Judge, and JOLLY, DAVIS, JONES, SMITH,
BARKSDALE,[*] DENNIS, CLEMENT, PRADO, OWEN, ELROD,
SOUTHWICK, HAYNES, GRAVES, and HIGGINSON, Circuit Judges.[**]

W. EUGENE DAVIS, Circuit Judge:

We took this case en banc to decide whether the seaman plaintiffs in this case, both the injured seamen and the personal representative of the deceased seaman, can recover punitive damages under either the Jones Act or the general maritime law. We affirm the district court and conclude that this case is controlled by the Supreme Court's decision in *Miles v. Apex Marine Corp.*,[1] which holds that the Jones Act limits a seaman's recovery to pecuniary losses where liability is predicated on the Jones Act or unseaworthiness. Because punitive damages are non-pecuniary losses, punitive damages may not be recovered in this case.

## FACTS AND PROCEEDINGS

These consolidated cases arise out of an accident aboard Estis Rig 23, a barge supporting a truck-mounted drilling rig operating in Bayou Sorrell, a navigable waterway in the State of Louisiana. The truck right toppled over, and one crew member, Skye Sonnier, was fatally pinned between the derrick and mud tank, and three others, Saul Touchet, Brian Suire, and Joshua

_____

[*] Judge BARKSDALE was a member of the original panel and sat with the full Court for rehearing en banc.
[**] Circuit Judge COSTA was not a member of the Court when this case was submitted for rehearing en banc and did not participate in this decision.
[1] 498 U.S. 19, 111 S. Ct. 317, 112 L. Ed. 2d 275 (1990).

No. 12-30714

Bourque,[2] have alleged injuries. At the time of the incident, Estis Well Service, L.L.C. ("Estis") owned and operated Rig 23, and employed Sonnier, Touchet, Suire, and Bourque (collectively, the "crew members").

Haleigh McBride, individually, on behalf of Sonnier's minor child, and as administratrix of Sonnier's estate, filed suit against Estis, stating causes of action for unseaworthiness under general maritime law and negligence under the Jones Act and seeking compensatory as well as punitive damages under both claims. The other crew members filed separate actions against Estis alleging the same causes of action and also requesting compensatory and punitive damages. Upon the crew members' motion, the cases were consolidated into a single action. Estis moved to dismiss the claims for punitive damages, arguing that punitive damages are not an available remedy as a matter of law where liability is based on unseaworthiness or Jones Act negligence. Treating it as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the court granted the motion and entered judgment dismissing all claims for punitive damages. Recognizing that the issues presented were "the subject of national debate with no clear consensus," the court granted plaintiffs' motion to certify the judgment for immediate appeal under 28 U.S.C. § 1292(b). This interlocutory appeal followed.

The panel, in a scholarly opinion, concluded that the Supreme Court's recent opinion in *Atlantic Sounding Co., Inc. v. Townsend*[3] controlled this case. The panel acknowledged that the *Townsend* court was presented with the limited issue of whether a seaman can recover punitive damages from his employer for willful failure to pay maintenance and cure. That case did not involve a claim for punitive damages under either the Jones Act or the general

---

[2] Bourque has settled.
[3] 557 U.S. 404, 129 S. Ct. 2561, 174 L. Ed. 2d 382 (2009).

No. 12-30714

maritime law. The panel, however, reasoned that the implication of *Townsend*'s holding is broader and teaches that because the unseaworthiness cause of action and the punitive damages remedy pre-existed the Jones Act and the Jones Act did not address either, then both the cause of action and remedy of punitive damages are available to injured seamen and the survivors of deceased seamen.

We granted rehearing en banc to determine whether the Supreme Court's decision in *Miles*, holding that the Jones Act limits a seaman's recovery for unseaworthiness under that Act or the general maritime law to "pecuniary losses," is still good law and whether that holding precludes plaintiffs' claims for punitive damages.

## STANDARD OF REVIEW

Whether punitive damages are an available remedy under the Jones Act and general maritime law to seamen or their survivors is a question of law we review de novo.[4]

## DISCUSSION

## I.

### A. Background

Appellants' arguments are founded primarily on their claim under general maritime law. A brief discussion of the legal and historical background of the general maritime law as it relates to the plaintiffs' case is therefore in order.

We start from the bedrock premise that the "[j]udicial power, in all cases of admiralty and maritime jurisdiction, is delegated by the Constitution to the Federal Government in general terms,"[5] reflecting "the adoption by all

---

[4] *See Atl. Sounding Co., Inc. v. Townsend*, 496 F.3d 1282, 1284 (11th Cir. 2007), *aff'd*, 557 U.S. 404 (2009).

[5] *The St. Lawrence*, 66 U.S. 522, 526, 17 L. Ed. 180 (1861).

No. 12-30714

commercial nations (our own included) of the general maritime law as the basis and groundwork of all their maritime regulations."[6] Once general maritime law was embedded in federal law, however, the question arose as to which branch of government had the authority to modify the maritime law. Over 160 years ago, the Supreme Court declared that the maritime law was subject to regulation by Congress: "The power of Congress to change the mode of proceeding in this respect in its courts of admiralty, will, we suppose, hardly be questioned."[7] The Court later summarized: "[I]t must now be accepted as settled doctrine that, in consequence of these provisions, Congress has paramount power to fix and determine the maritime law which shall prevail throughout the country."[8]

In 1886, the Court, in *The Harrisburg*,[9] held that no action for wrongful death "will lie in the courts of the United States under the general maritime law." That remained the law of the land until the Supreme Court overruled *The Harrisburg* in *Moragne v. States Marine Lines, Inc.* in 1970.[10]

## B. The Jones Act and FELA

In 1920, Congress enacted the Jones Act, 46 U.S.C. § 30104, and extended to seamen the same negligence remedy for damages afforded to railroad workers under the Federal Employers' Liability Act ("FELA").[11] This provided a remedy to seamen and their survivors to sue for compensation for personal injury and wrongful death based on the negligence of the seamen's employer. Because Congress imported FELA into the Jones Act, we must begin our analysis with FELA.

---

[6] *The Lottawanna*, 88 U.S. 558, 572-73, 22 L. Ed. 654 (1874).

[7] *The Genesee Chief*, 53 U.S. 443, 459-60, 13 L. Ed. 1058 (1851).

[8] *S. Pac. Co. v. Jensen*, 244 U.S. 205, 215, 37 S. Ct. 524, 61 L. Ed. 1086 (1917).

[9] 119 U.S. 199, 213, 7 S. Ct. 140, 30 L. Ed. 358 (1886).

[10] 398 U.S. 375, 90 S. Ct. 1772, 26 L. Ed. 2d 339 (1970).

[11] *Miles*, 498 U.S. at 23-24.

No. 12-30714

Under 45 U.S.C. §§ 51-59, FELA provides that a carrier is liable for its negligence, although the employee's recovery is reduced if he was negligent.[12] The compensation allowed for the employee's recovery is simply "in damages."[13] The damages allowed under FELA were defined by the Supreme Court in *Michigan Central Railroad Co. v. Vreeland*.[14] In construing FELA, the Court stated with respect to damages in this wrongful death action: "It is a liability for the loss and damage sustained by relatives dependent upon the decedent. It is therefore a liability for the pecuniary damage resulting to them and for that only."[15]

The *Vreeland* Court stated that the damages under FELA "are such as flow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received if the deceased had not died from his injuries."[16] As there must be "some reasonable expectation of pecuniary assistance or support of which they have been deprived" the Court held that "[c]ompensation for such loss manifestly does not include damages by way of recompense for grief or wounded feelings."[17] Similarly, the term "pecuniary" "excludes, also, those losses which result from the deprivation of the society and companionship, which are equally incapable of being defined by any recognized measure of value."[18] Because the jury instruction on damages in *Vreeland* was not "confined to a consideration of the financial benefits which might reasonably be expected from [the decedent] in a pecuniary way," the Court reversed the judgment entered on the verdict.[19]

---

[12] 45 U.S.C. §§ 51, 53.

[13] *Id.* § 51.

[14] 227 U.S. 59, 33 S. Ct. 192, 57 L. Ed. 417 (1913).

[15] *Id.* at 69.

[16] *Id.* at 70.

[17] *Id.*

[18] *Id.* at 71 (internal quotation marks omitted).

[19] *Id.* at 73-74.

6

No. 12-30714

With this background, we turn to the Supreme Court's unanimous opinion in *Miles* in 1990, which we conclude controls this appeal.

## II.

### A. *Miles*

The facts in *Miles* are on all fours with Ms. McBride's wrongful death action. In both cases, the personal representative of a deceased seaman sued the employer for wrongful death under the Jones Act and general maritime law. No maintenance and cure action was presented in either case. In both cases the seaman met his death in the service of his ship in state waters. The Supreme Court made three significant holdings relevant to this case. The Court held that:

(1)    Before the Court's decision in *Moragne v. States Marine Lines, Inc.* in 1970,[20] the general maritime law provided no recovery for wrongful death.[21]

(2)    The Court then recognized the anomaly created by the Court's *Moragne* decision, which granted to survivors of longshoremen killed in state waters the right to sue for unseaworthiness under the general maritime law, yet afforded no similar right to the seaman's survivors to sue for wrongful death under the general maritime law. The Court then expressly extended the rule established in *Moragne* to the seaman's survivors, recognizing for the first time their right to assert a general maritime law cause of action for wrongful death.[22]

(3)    Finally, the Court considered the issue presented directly in this case: the scope of the survivor's recovery in her general maritime law/unseaworthiness action for wrongful death. The Court, after extended

---

[20] 398 U.S. 375 (1970).

[21] *See Miles*, 498 U.S. at 23-24; *see also The Harrisburg*, 119 U.S. 199; Kenneth G. Engerrand & Scott R. Brann, *Troubled Waters for Seamen's Wrongful Death Actions*, 12 J. MAR. L. & COM. 327, 335 (1981).

[22] *Miles*, 498 U.S. at 30.

No. 12-30714

discussion and analysis, limited the survivors in *Miles* to recovery of their "pecuniary losses." The Court therefore denied recovery for damages for loss of society.[23]

In considering this element of damages, the *Miles* Court began its analysis by discussing its decision in *Mobil Oil Corp. v. Higginbotham*,[24] in which the Court had considered the scope of a survivor's recovery under the Death on the High Seas Act ("DOHSA") for a person killed on the high seas. The Court noted that in *Higginbotham*, it had rejected a claim for loss of society because Congress, in DOHSA, expressly limited recovery to "pecuniary losses." It therefore declined to supplement the statute and allow more expansive damages. The Court emphasized the important language it relied on from *Higginbotham*: "But in an 'area covered by the statute, it would be no more appropriate to prescribe a different measure of damages than to prescribe a different statute of limitations, or a different class of beneficiaries.'"[25]

The Court then reasoned that its logic in *Higginbotham* controlled its decision in *Miles*. The Court first acknowledged that unlike the statutory language in DOHSA, neither the Jones Act nor FELA made explicit the "pecuniary loss" limitation. The Court concluded, however, that the limitation applied:

> When Congress passed the Jones Act, the *Vreeland* gloss on FELA, and the hoary tradition behind it, were well established. Incorporating FELA unaltered into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well. We assume that Congress is aware of existing

---

[23] *Id.* at 30-33.  In *Miles*, the deceased seaman's mother sought compensation for both the loss of support and services and loss of society, but the jury was instructed she could only recover for loss of society if she had been financially dependent on him.

[24] 436 U.S. 618, 98 S. Ct. 2010, 2014, 56 L. Ed. 2d 581 (1978).

[25] 498 U.S. at 31 (quoting *Higginbotham*, 436 U.S. at 625).

No. 12-30714

> law when it passes legislation. There is no recovery for loss of society in a Jones Act wrongful death action.
>
> The Jones Act also precludes recovery for loss of society in this case. The Jones Act applies when a seaman has been killed as a result of negligence, and it limits recovery to pecuniary loss.[26]

The Court therefore squarely held that the recovery of the deceased seaman's survivors under the Jones Act is limited to pecuniary losses. The Court then turned to the scope of the survivor's recovery for unseaworthiness under the general maritime law. As the Court explained, our place in the constitutional scheme does not permit us

> to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence. We must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seamen.[27]

Thus, the *Miles* court established "a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act or the general maritime law."[28]

In summary, *Miles* decided in a wrongful death case completely indistinguishable from Ms. McBride's case that Congress, by incorporating FELA as the predicate for liability and damages in the Jones Act to seamen and their survivors, intended to import into the Jones Act the *Vreeland*

---

[26] *Id.* at 32 (citation omitted).

[27] *Id.* at 32-33. In other words, because nonpecuniary damages are not available under the Jones Act (a fault-based scheme) even in cases of egregious conduct, it would not make sense to permit such damages under an unseaworthiness claim, which has not required any showing of fault since the Supreme Court's decision in *Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 64 S. Ct. 455, 88 L. Ed. 561 (1944), several decades before *Miles* was decided.

[28] *Miles*, 498 U.S. at 33.

No. 12-30714

"pecuniary limitation on damages as well."[29] Just as in *Higginbotham*, the Court did not "pause to evaluate the opposing policy arguments" because "Congress has struck the balance for us. It has limited survivors to recovery of their pecuniary losses."[30] The Court did not limit its holding to claims under the Jones Act. Rather, the Court held that the damages available under the general maritime law cause of action for wrongful death—which cause of action the Court recognized for the first time in *Miles*—were likewise limited to recovery of pecuniary losses.

The Jones Act applies to both injured seamen and those killed through the negligence of their employer. Even though *Miles* was a wrongful death action, no one has suggested why its holding and reasoning would not apply to an injury case such as those asserted by Messrs. Suire and Touchet.[31] No case under FELA has allowed punitive damages, whether for personal injury or death.[32] Because the Jones Act adopted FELA as the predicate for liability and damages for seamen, no cases have awarded punitive damages under the Jones Act.[33] It follows from *Miles* that the same result flows when a general maritime

---

[29] *Id.* at 32.

[30] *Higginbotham*, 436 U.S. at 623.

[31] Indeed, we recognized just such a rule in *Murray v. Anthony J. Bertucci Constr. Co., Inc.*, 958 F.2d 127 (5th Cir. 1992), in which we applied *Miles* to an injury case and barred nonpecuniary loss of society damages to the spouse of the plaintiff seaman asserting an unseaworthiness claim coupled with a Jones Act negligence claim.

[32] *See Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450, 1457 (6th Cir. 1993) ("It has been the unanimous judgment of the courts since before the enactment of the Jones Act that punitive damages are not recoverable under the Federal Employers' Liability Act." (citing *Kozar v. Chesapeake & O. Ry. Co.*, 449 F.2d 1238, 1240-43 (6th Cir. 1971)); *Wildman v. Burlington N. R.R. Co.*, 825 F.2d 1392, 1395 (9th Cir. 1987) ("[P]unitive damages are unavailable under the FELA.").

[33] *See Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1347 (9th Cir. 1987), *opinion modified on reh'g*, 866 F.2d 318 (9th Cir. 1989) ("Punitive damages are non-pecuniary damages unavailable under the Jones Act. . . . Punitive damages are therefore also unavailable under DOHSA." (citing *Kopczynski v. The Jacqueline*, 742 F.2d 555, 561 (9th Cir. 1984)); *Miller*, 989 F.2d at 1457 ("Punitive damages are not therefore recoverable under the Jones Act." (citing *Kopczynski,* 742 F.2d at 560-61)).

No. 12-30714

law personal injury claim is joined with a Jones Act claim. So *Miles*'s conclusion that regardless of opposing policy arguments, "Congress has struck the balance for us" in determining the scope of damages, applies to the personal injury actions as well as Ms. McBride's wrongful death action.

Although Congress and the courts both have a lawmaking role in maritime cases, "Congress has paramount power to fix and determine the maritime law which shall prevail throughout the country."[34] Even if a general maritime law remedy for wrongful death had been available to seamen in 1920, when Congress enacted the Jones Act,[35] the Supreme Court's interpretation of the Jones Act in *Miles* must control, and it resolves the question presented in this appeal.

## B. *Townsend*

Appellant argues that the decision of the Supreme Court in *Atlantic Sounding Co. v. Townsend* overrules or severely undermines *Miles* so that it does not control today's case. But instead of overruling *Miles,* the *Townsend* Court carefully distinguished its facts from *Miles* and reaffirmed that *Miles* is still good law.

In *Townsend,* the Court considered a seaman's claim for punitive damages for the willful failure to pay maintenance and cure. In distinguishing its maintenance and cure case from *Miles*'s wrongful death action, the Court in *Townsend* recognized that "a seaman's action for maintenance and cure is 'independent' and 'cumulative' from other claims such as negligence and that the maintenance and cure right is 'in no sense inconsistent with, or an alternative of, the right to recover compensatory damages [under the Jones

---

[34] *Jensen*, 244 U.S. at 215.

[35] Again, until *The Harrisburg* was overruled by *Moragne* in 1970, no action for wrongful death was recognized under the general maritime law. *Miles*, 498 U.S. at 23-24.

Act].'"[36] The Court agreed that "both the Jones Act and the unseaworthiness remedies are additional to maintenance and cure: the seaman may have maintenance and cure and also one of the other two."[37] Unlike the seaman's remedy for damages based on negligence and unseaworthiness, "the Jones Act does not address maintenance and cure or its remedy."[38] Thus, in contrast to the action for damages based on unseaworthiness, in an action for maintenance and cure it is "possible to adhere to the traditional understanding of maritime actions and remedies without abridging or violating the Jones Act; unlike wrongful-death actions, this traditional understanding is not a matter to which 'Congress has spoken directly.'"[39]

The *Townsend* court expressly adopted *Miles*'s reasoning by recognizing that "Congress' judgment must control the availability of remedies for wrongful-death actions brought under general maritime law."[40] The Court could not have been clearer in signaling its approval of *Miles* when it added: "The reasoning of *Miles* remains sound."[41]

## C. Pecuniary Losses

Appellants argue finally that even if their recovery on their general maritime law action is limited to pecuniary loss, punitive damages should be

---

[36] *Townsend*, 557 U.S. at 423 (alteration in original, quoting *Pacific S.S. Co. v. Peterson*, 278 U.S. 130, 138-39, 49 S. Ct. 75, 73 L. Ed. 220 (1928)). This language reflects the *Townsend* Court's understanding that the negligence/unseaworthiness actions are alternative, overlapping actions derived from the same accident and look toward the same recovery. The Court explicitly contrasted these actions with the independent maintenance and cure action. *See Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 47 S. Ct. 600, 71 L. Ed. 1069 (1927) (reasoning that the negligence and unseaworthiness actions are alternative causes of action, so closely related that judgment on one is res judicata of the other).

[37] *Townsend*, 557 U.S. at 424 (quoting G. Gilmore & C. Black, THE LAW OF ADMIRALTY § 6–23, p. 342 (2d ed. 1975)).

[38] *Id.* at 420.

[39] *Id.* at 420-21 (quoting *Miles*, 498 U.S. at 31).

[40] *Id.* at 419 (citing *Miles*, 498 U.S. at 32-36).

[41] *Id.* at 420.

No. 12-30714

characterized as pecuniary losses. Appellants have no legal authority whatever to support this argument.

We start with FELA because that is the statutory source of the *Vreeland* pecuniary loss limitation. Every circuit court case on the subject holds that punitive damages are not recoverable under FELA because those losses are non-pecuniary.[42] The description of pecuniary losses in Supreme Court cases belie the argument that punitive damages could be characterized as pecuniary. In *Gulf, Colorado & Santa Fe Railway v. McGinnis*, which came out shortly after *Vreeland*, the Supreme Court reiterated the rule announced therein:

> [T]he act [FELA] in this aspect has been construed as intended only to *compensate* the surviving relatives of such a deceased employee for the *actual pecuniary loss* resulting to the particular person or persons for whose benefit an action is given. The recovery must therefore be limited to *compensating* those relatives for whose benefit the administrator sues as are shown to have sustained some *pecuniary loss*.[43]

The message that pecuniary loss is designed to compensate the plaintiff for an actual loss suffered comes through loud and clear. The statement in *Miles* itself describing the covered losses stated that in "[i]ncorporating FELA unaltered into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well."[44] At least two circuit cases have held that punitive damages under the Jones Act are not recoverable because they are non-pecuniary.[45] Furthermore, interpreting *Miles*, at least one circuit case

---

[42] *See, e.g.*, *Miller*, 989 F.2d at 1457; *Wildman*, 825 F.2d at 1395.

[43] 228 U.S. 173, 175 (1913) (emphasis added) (citing *Vreeland*, 227 U.S. 59, and *Am. R. Co. of Porto Rico v. Didricksen*, 227 U.S. 145, 33 S. Ct. 224, 57 L. Ed. 456 (1913)).

[44] 498 U.S. at 32.

[45] *See Bergen*, 816 F.2d at 1347 ("Punitive damages are non-pecuniary damages unavailable under the Jones Act. . . . Punitive damages are therefore also unavailable under DOHSA." (citing *Kopczynski*, 742 F.2d at 561)); *Miller*, 989 F.2d at 1457 ("Punitive damages are not therefore recoverable under the Jones Act." (citing *Kopczynski*, 742 F.2d at 560-61)).

No. 12-30714

has held that punitive damages are barred for an unseaworthiness claim under general maritime law because such damages are nonpecuniary.[46] No circuit cases are to the contrary.

Indeed, before *Townsend*, respected commentary unequivocally stated: "The Jones Act precludes punitive damages because they are non-pecuniary in nature. The seaman may not use a general maritime law claim to recover damages that would be unavailable under the Jones Act; thus punitive damages are properly denied in such seamen's cases."[47] This is consistent with the black letter law courts routinely include in jury charges, e.g.: "*In addition to actual damages*, the law permits a jury, under certain circumstances, to award the injured person punitive and exemplary damages in order to punish the wrongdoer for some extraordinary misconduct and to serve as an example or warning to others not to engage in such conduct."[48] Punitive damages simply do not fit under the case law as a subset of pecuniary losses.

## III. Conclusion

In the words of the Supreme Court, "Congress has struck the balance for us."[49] On the subject of recoverable damages in a wrongful death case under the Jones Act and the general maritime law, it has limited the survivor's recovery to pecuniary losses. Appellants have suggested no reason this holding

---

[46] *See Wahlstrom v. Kawasaki Heavy Indus., Ltd.*, 4 F.3d 1084, 1094 (2d Cir. 1993) ("We are in general agreement with the view that plaintiffs who are not allowed by general maritime law to seek nonpecuniary damages for loss of society should also be barred from seeking nonpecuniary punitive damages.").

[47] THOMAS J. SCHOENBAUM, ADMIRALTY & MAR. LAW § 5-18 (5th ed.) (footnotes omitted).

[48] KEVIN F. O'MALLEY, JAY E. GRENIG & HON. WILLIAM C. LEE, 3 FEDERAL JURY PRACTICE AND INSTRUCTIONS § 128:81 (6th ed. 2013) (emphasis added). *See also* Fifth Circuit Pattern Jury Instruction No. 4.10, which provides, in relevant part: "The purpose of an award of punitive damages is to punish the defendant and to deter him and others from acting as he did."

[49] *Higginbotham*, 436 U.S. at 623.

14

No. 12-30714

and analysis would not apply equally to the plaintiffs asserting claims for personal injury.

The Supreme Court, in *Townsend,* did not overrule *Miles*. Rather, it took pains to distinguish that maintenance and cure case from *Miles* and confirmed that "[t]he reasoning of *Miles* remains sound."[50]

Based on *Miles* and other Supreme Court and circuit authority, pecuniary losses are designed to compensate an injured person or his survivors. Punitive damages, which are designed to punish the wrongdoer rather than compensate the victim, by definition are not pecuniary losses.

Punitive damages are not recoverable by the plaintiffs in these actions. The judgment of the district court is AFFIRMED.

---

[50] *Townsend*, 557 U.S. at 420.

No. 12-30714

EDITH BROWN CLEMENT, Circuit Judge, concurring, joined by JOLLY, JONES, SMITH, and OWEN, Circuit Judges.


While I join the majority opinion, I write separately to further explain the historical background mandating this result.

## I.

McBride's argument in favor of punitive damages largely requires establishing that punitive damages were historically available in pre-Jones Act unseaworthiness cases. To establish this, McBride relies on three main points:

- First, the Supreme Court's discussions in *Townsend* and *Baker* indicating that punitive damages were available in at least some maritime law cases before the Jones Act.

- Second, this Circuit's post-Jones Act, pre-*Miles* case law approving of punitive damages in unseaworthiness cases. *See, e.g., In re Merry Shipping, Inc.*, 650 F.2d 622, 626 (5th Cir. Unit B 1981).

- Third, pre-Jones Act unseaworthiness cases that McBride claims awarded punitive damages.

When examined closely, none of these arguments establish McBride's ultimate contention. To the contrary, decades of maritime practice, along with the Supreme Court's discussions of unseaworthiness liability in *The Osceola*, 189 U.S. 158 (1903), as well as the Court's subsequent clarification in *Pacific Steamship Co. v. Peterson* that unseaworthiness plaintiffs are "entitled to . . . [an] indemnity by way of *compensatory* damages," 278 U.S. 130, 138 (1928), demonstrate that punitive damages were not available for unseaworthiness.

No. 12-30714

## A. Supreme Court Jurisprudence Does Not Require Punitive Damages In Unseaworthiness Cases.

As a matter of law and common sense, *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), does not resolve the question before us.  As for the law, *Baker* only addressed whether the Clean Water Act preempted the punitive damages supposedly available at general maritime law—not whether punitives were available in unseaworthiness actions.  *See, e.g., id.* at 490.  And as for common sense, the narrowness of *Baker* explains why the *Townsend* Court actually had to address the issue of punitive damages in maintenance and cure cases rather than simply saying that they had already addressed the issue in *Baker*.[1]

That leaves McBride with the thin strand of *Townsend*.  But *Townsend*, as a maintenance and cure case,[2] offers minimal support given the significant differences between maintenance and cure actions and unseaworthiness actions.  While McBride's counsel dismissed these differences in his arguments to this court, his prior academic writings recognized them as reasonable:

> [D]istrict judges . . . reason[ed] roughly as follows: the Jones Act and unseaworthiness actions are Siamese twins.  Therefore, once one . . . takes *Miles* to mean that punitive damages are unavailable

---

[1] McBride counters strenuously that the result in *Baker* makes no sense unless seamen—the wards of admiralty—are given the same exact remedy as third parties injured in a maritime context.  But McBride's argument focuses too much on the magnitude of a seaman's recovery, and not enough on the probability of a seaman's recovery.  That a seaman is a ward of admiralty has not traditionally meant that a seaman must always be granted every possible litigation advantage under the general maritime law.  *Compare, e.g., The Osceola*, 189 U.S. at 175 (noting that a seaman is "not allowed to recover an indemnity for the negligence of the master"), *with Leathers v. Blessing*, 105 U.S. 626, 630 (1881) (recognizing a negligence recovery under the general maritime law), *and Atl. Trans. Co. of W. Va. v. Imbrovek*, 234 U.S. 52, 63 (1914) (same).

Rather, a seaman's special status brings with it a specialized set of rights that both provides advantages in some regards and disadvantages in other regards.  Accordingly, there is nothing inherently incongruous with the special status of seamen for seamen to have lesser remedies in some instances when they also are granted a unique right—backed up by the specter of punitive damages—to a virtually guaranteed maintenance and cure remedy.  *See also infra* note 12 (noting better policy reasons for permitting punitive damages for a wrongful failure to provide maintenance and cure than in unseaworthiness cases).

[2] *See Atl. Sounding Corp. v. Townsend*, 557 U.S. 404, 407 (2009).

17

No. 12-30714

under the Jones Act, further extending *Miles* to mean that punitive damages are also unavailable in unseaworthiness actions is virtually unavoidable. But the action for damages for withholding maintenance and cure is completely separate and independent from the Jones Act and unseaworthiness claims. . . . In contrast with the perceived situation with the Jones Act and unseaworthiness actions, there is no extensive legislation from Congress with respect to maintenance and cure. Congress has left to the courts the task of writing the rules on maintenance and cure. Moreover, the availability of punitive damages to penalize the wrongful withholding of maintenance and cure is intimately tied to the special solicitude for the welfare of seamen and their families, and peculiar role of maintenance and cure in providing a seaman with food and lodging when he becomes sick or injured in the ship's service.

The distinction drawn by the district courts between the law of maintenance and cure and the Jones/unseaworthiness "Siamese twins" was *historically and analytically sound* . . . .[3]

Moreover, the Supreme Court has likewise agreed that the basis for unseaworthiness liability is different than the basis for maintenance and cure liability.[4]

The differences between maintenance and cure and unseaworthiness actions make maintenance and cure cases a poor guide for determining unseaworthiness remedies. Whereas a seaman's right to maintenance and

---

[3] David W. Robertson, *Punitive Damages in American Maritime Law*, 28 J. Mar. L. & Comm. 73, 147-48 (1997) (emphasis added) (internal quotation marks and footnotes omitted); *see also* 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 5-18, at 330 (5th ed. 2011) ("[P]unitive damages may not be awarded in a seaman's personal injury or death case either under the Jones Act or unseaworthiness."); David Robertson, *Punitive Damages in American Maritime Law: Miles*, Baker, *and* Townsend, 70 La. L. Rev. 463, 464 (2010) ("Historically, conceptually, and functionally, the unseaworthiness and Jones Act tort actions are 'Siamese twins.' The much older maintenance and cure action does not derive from tort principles and is something like a first cousin to the other two."); *cf. id.* at 499 ("[O]pen questions in the tort realm include the availability of punitive damages in unseaworthiness actions . . . .").

[4] *See, e.g.*, *Aguilar v. Standard Oil Co. of N.J.*, 318 U.S. 724, 730 & n.8 (1943) (noting that maintenance and cure liability is "unlike" liability for unseaworthiness and the Jones Act).

cure is "ancient"[5] and made its first appearance in English maritime law in 1338,[6] unseaworthiness is actually an American doctrinal innovation that only began to take shape as an independent action during the 1870s,[7] and did not crystallize until well into the mid-twentieth century. To be sure, cases before the 1870s recognized the shipowner had a duty to furnish a seaworthy ship. But that duty generally did not give rise to an independent action for damages.[8] Instead, unseaworthiness acted as an excuse for non-performance by seamen and insurance companies. So, for example, unseaworthiness excused a seaman from performing his contract,[9] and rendered an insurance contract void.[10] Thus, once American courts began permitting recovery for unseaworthiness, thereby "allowing an *indemnity* beyond the expense of maintenance and cure," those cases represented a "departure" from the Continental maritime tradition.[11] And notwithstanding the American courts' judicial creativity, unseaworthiness was "an obscure and relatively little used remedy" until it became a strict liability action during the 1940s.[12]

---

[5] *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 527 (1938).

[6] *See* John B. Shields, *Seamen's Rights To Recover Maintenance and Cure Benefits*, 55 Tul. L. Rev. 1046, 1046 (1981). Indeed, the right to maintenance and cure dates back to at least the laws of Oleron, which were promulgated during the twelfth century. *See The Osceola*, 189 U.S. 158, 169 (1903).

[7] *See, e.g.*, *The Osceola*, 189 U.S. at 175.

[8] *See, e.g.*, *Reed v. Canfield*, 20 F. Cas. 426, 429 (C.C.D. Mass. 1832) (Story, J.).

[9] *See, e.g.*, *The Heroe*, 21 F. 525, 528 (D. Del. 1884) ("It is not denied that unseaworthiness releases a crew, and that they become entitled to their full wages for the month or for the voyage . . . ."). Unseaworthiness also operated as a defense to criminal charges for refusing to obey the master's orders. *See, e.g.*, *United States v. Nye*, 27 F. Cas. 210, 211 (C.C.D. Mass. 1855); *United States v. Ashton*, 24 F. Cas. 873, 874-85 (C.C.D. Mass 1834).

[10] Charles Abbott, A Treatise of the Law Relative to Merchant Ships and Seamen: In Four Parts 181 (London 1802).

[11] *The Osceola*, 189 U.S. at 175 (emphasis added).

[12] *Miles v. Apex Marine Corp.*, 498 U.S. 19, 25 (1990) (quoting Grant Gilmore & Charles L. Black Jr., The Law of Admiralty 383 (2d ed. 1975)); *see also Mahnich v. S. S.S. Co.*, 321 U.S. 96 (1944). As a matter of incentives, there is a greater economic need for punitive damages in the maintenance and cure context than in the unseaworthiness context. Whereas the shipowner has just about every economic incentive to dump an injured seaman

No. 12-30714

These distinctions matter. If *Miles v. Apex Marine Corp.* stands for anything, it at the very least signals that all damages are not automatically available in all maritime cases.[13] Accordingly, even though we are bound by *Townsend*'s determination that punitive damages were available in maintenance and cure cases, we cannot blithely assume that because they are available in a wholly different type of maritime action that pre-dates the Magna Carta they are necessarily available in a maritime action that (1) was first embraced by the Supreme Court in 1903, (2) was described early on as providing an indemnity for *compensatory* damages,[14] and (3) did not take its modern form until well after the passage of the Jones Act. Instead, we need to examine post-Jones Act unseaworthiness cases awarding punitive damages to see whether they provide persuasive authority one way or the other.

## B. *Merry Shipping* And Its Ilk Are Poor Guides

In *In re Merry Shipping, Inc.*, this court held, as a matter of first impression, that punitive damages were available to unseaworthiness plaintiffs. 650 F.2d at 626. But *Merry Shipping* primarily relied on (1) non-seaworthiness cases speaking to the damages available under general maritime law for maintenance and cure and trespass, and (2) then-contemporaneous court cases reaching the same result. *See id.* at 624 n.9.

---

in a port and abandon him to his fate, a ship owner who agrees to put to sea with an unseaworthy vessel risks (1) abandonment by his crew and his insurers, (2) significant liability to the merchants whose cargo the ship is carrying, and (3) the uninsured loss of a significant asset. And beyond these severe economic consequences, there are potential criminal consequences as well. *See* 46 U.S.C. § 10908 ("A person that knowingly sends or attempts to send, or that is a party to sending or attempting to send, a vessel of the United States to sea, in an unseaworthy state that is likely to endanger the life of an individual, shall be fined not more than $1,000, imprisoned for not more than 5 years, or both."); *see also* Note, *Punitive Damages Stow Away in the Fifth Circuit:* McBride v. Estis Well Service, L.L.C., 38 Tul. Mar. L.J. 649, 663 (2014).

[13] *See* 498 U.S. at 31-33.
[14] *Pac. S.S. Co.*, 278 U.S. at 137-38.

No. 12-30714

Neither source establishes that punitive damages were actually available in unseaworthiness cases prior to the Jones Act.  The novel nature of unseaworthiness actions makes other more established maritime actions (such as maintenance and cure cases) poor guides to the availability of such damages in unseaworthiness cases.  And nearly all of the contemporaneous cases cited in *Merry Shipping* address the issue in passing and merely assume the availability of punitive damages in some other appropriate case.[15]  Only *Baptiste v. Superior Court*, 106 Cal. App. 3d 87 (Cal. Ct. App. 1980) and *In re Den Norske Amerikalinje A/S*, 276 F. Supp. 163 (N.D. Ohio 1967), appear to analyze the question before this court, and in the end those cases rely on the proposition that punitive damages are available in other areas of American law and in some other maritime cases, and therefore, there is no reason not to recognize punitive damages in unseaworthiness cases.  Throughout all these sources, one searches in vain for actual authority establishing that pre-Jones Act unseaworthiness plaintiffs were entitled to an award of punitive damages.  Rather, the primary authority supporting punitive damages in unseaworthiness cases appears to be a collective judicial "oh, hell, why not" principle that holds that because punitive damages are available in many other types of actions they should also be available in unseaworthiness cases.

Now, to be sure, courts rely on presumptions all the time.  For example, we regularly rely on the presumption that there should be no right without a remedy.  *See, e.g.*, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *Ex Parte Young*, 209 U.S. 123 (1908).  But even though we recognize a general principle that there should be no right without

---

[15] *See, e.g.*, *In re Marine Sulphur Queen*, 460 F.2d 89, 105 (2d Cir. 1972); *U.S. Steel Corp. v. Fuhrman*, 407 F.2d 1143 (6th Cir. 1969); *Phillip v. U.S. Lines Co.*, 355 F.2d 25 (3d Cir. 1966); *Kwak Hyung Rok v. Cont'l Seafoods, Inc.*, 462 F. Supp. 894, 899 (S.D. Ala. 1978); *Renner v. Rockwell Int'l Corp.*, 403 F. Supp. 849, 852 (C.D. Cal. 1975), *rev'd* 587 F.2d 1030 (9th Cir. 1978); *Mpiliris v. Hellenic Lines, Ltd.*, 323 F. Supp. 865, 894 (S.D. Tex. 1969).

No. 12-30714

a remedy, that does not mean that every plaintiff that establishes a legal wrong is entitled to relief.  *See, e.g.*, *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803). Similarly, even though punitive damages are available in many other types of actions, and indeed in some maritime cases, that does not mean that unseaworthiness plaintiffs are entitled to punitive damages when such an award runs contrary to historical maritime practice and the instructions of the Supreme Court in *The Osceola* and *Pacific Steamship*.  I turn to that issue now.

## C. The Historical Evidence Strongly Suggests That Punitive Damages Were Not Available In Unseaworthiness Actions.

From the way this case has been presented, one would expect to find a plethora of pre-Jones Act unseaworthiness cases awarding punitive damages. But a review of the cases cited in the briefs and at oral argument suggests the existence of only a single potential unseaworthiness case awarding punitive damages—*The Rolph*—which does not even pre-date the Jones Act.[16]  *See*  293

---

[16] McBride also mentions the cases of *The City of Carlisle*, *The Troop*, *Swift v. The Happy Return*, *The Noddleburn*, and *The Childe Harold* as standing for the proposition that punitive damages were traditionally available in unseaworthiness cases.  But these cases do not involve the award of a punitive damages for unseaworthiness.

 *The City of Carlisle* is a maintenance and cure case that began when a sixteen-year-old apprentice seaman was injured while working on a ship.  *See* 39 F. 807 (D.C. Ore. 1889). While lowering the sail, the boy was struck by a "clew-iron," fracturing and depressing his skull.  *Id.* at 810.  Bedridden for weeks with limited personal attention, the boy was thereafter forced to work despite his partial paralysis.  *Id.* at 810-11.  When the ship reached port, "[t]he master failed and neglected to procure or provide any medical aid or advice for the boy . . . and was contriving and intending to get rid of him as easily as possible."  *Id.* at 812.  Nor did the master send the boy home at the ship's expense.  *Id.*  Accordingly, the key issue at trial was the negligence of the boy during the operation with the sail, because negligence of a "gross character" would "forfeit [an injured seaman's] right to be kept and cured at the expense of the vessel": maintenance and cure.  The court found that the boy's negligence was not of such a character and described his treatment on the ship as a "grievous wrong."  *Id.* at 815.  Reinforcing that *The City of Carlisle* concerns maintenance and cure, the court assessed damages for medical care and wages "until his return home."  *Id.* at 817.

 *The Troop* is another maintenance and cure case.  *See* 118 F. 769 (D.C. Wash. 1902). A sailor fell from high on a ship, severely fracturing the bones of his left arm and right thigh. *Id.* at 769.  Although the ship was only six miles off shore, it did not return to port for the seaman's medical care, but continued on its journey for 36 days.  *Id.*  The captain applied splints himself, put the seaman in a bed too small for his injuries to heal properly, and

No. 12-30714

F. 269 (N.D. Cal. 1923), *aff'd* 299 F. 52 (9th Cir. 1924). And even if we leave aside the temporal impossibility of Congress deciding to leave the remedy set out in a 1923 unseaworthiness case untouched in a 1920 statute, *The Rolph* hardly stands out as providing a clear award of punitive damages.

*The Rolph* concerns a brutally violent first mate. The first mate blinded one sailor, deafened another, and ordered yet another to his near-certain death on a heavy sea. *Id.* at 270-72. But *The Rolph* is not a case about punitive damages. The damages the court ordered were based on the testimony of medical witnesses and witnesses concerning "the expectation of life and earnings of these men." *Id.* at 272.[17] If this case is the great proclamation of

---

assigned the ship's steward to look after the man, a crewman too busy to look in more than every other day. *Id.* at 769-70. The court rejected causes of action based on unseaworthiness or negligence. "I hold that no liability, except for expenses and wages, attaches to the ship or owners for a personal injury to a seaman happening while he is in the service of a British ship, in consequence of the negligence of the captain . . . ." *Id.* at 770. Damages were available based on the "sixth article of the laws of Oleron," which sets out the obligation of maintenance and cure, not unseaworthiness. *Id.* at 771.

Nor do *Swift v. The Happy Return*, 23 F. Cas. 560 (D. Pa. 1799) (No. 13,697), *The Noddleburn*, 28 F. 855 (D. Or. 1886) or *The Childe Harold*, 5 F. Cas. 619 (S.D.N.Y. 1846) (No. 2676), save the day for McBride. *Swift*, which arose long before courts recognized an independent cause of unseaworthiness, deals with a claim for wages. 23 F. Cas. at 561. The discussion of "atrocious" food in *Swift* that McBride points to examines when the ship has an obligation to pay a seaman's boarding expenses in a foreign port, and the later discussion of the need to provide medical care to a seaman again examines the ship's obligations since the Laws of Oleron to provide maintenance and cure. *Id.* at 561 & n.2. *The Noddleburn* concerns a claim by a British seaman against a British vessel and applies British law to analyze whether the fellow servant rule (or the vice principal exception to the fellow servant rule) applies when a seaman falls from a defective rope that the ship's officer was aware of. 28 F. at 855-57. Moreover, a punitive damages claim was not awarded, and the court's only discussion of a possibly enhanced remedy came in the context of poor medical care after the injury. *Id.* at 860. Finally, *The Childe Harold* centered around a crew that claimed violation of a *statutory* requirement to sail with sufficient amounts of "wholesome ship-bread" for a voyage. 5 F. Cas. at 619. The statute provided recovery only if the ship had set sail with insufficient amounts of good bread, not if the bread subsequently rotted on the voyage. For the latter, sailors were "left to their legal remedies, as in other cases of maltreatment, not provided for by statute." *Id.* at 620. And what kind of damages could be recovered for these non-statutory claims? They could leave the ship without penalty and the owner would have to pay them wages for the voyage. *Id.*

[17] McBride places undue emphasis on the two sailors who garnered $500 recoveries for "claimed assaults, but did not claim any personal injury." 293 F. at 269, 272. The Ninth

No. 12-30714

the historical availability of punitive damages for unseaworthiness, one wonders (1) why the *Rolph* court felt it necessary to shroud its award in language that is patently compensatory, and (2) why the Supreme Court observed just five years later in *Pacific Steamship*—which cited the Ninth Circuit's *Rolph* opinion—that an injured seaman who elects to bring a unseaworthiness claim is "entitled to . . . [an] indemnity by way of *compensatory* damages," 278 U.S. at 138 (emphasis added).

Moreover, assuming *arguendo* that *The Rolph* awarded punitive damages, we should not rely on one dust-covered case to establish that punitive damages were generally available in unseaworthiness cases. In the first instance, it would be a one-way ratchet of the worst sort if all we had to do to justify punitives was to pluck out a single court decision awarding such damages. But more importantly, courts can err—particularly given the complexity of maritime law—and so generalizing a supposed national understanding from one or even a handful of cases is a perilous task.

Worse, the myopic focus on engaging in a close literary analysis of a handful of unseaworthiness cases overlooks some of the strongest evidence that punitive damages were not available in unseaworthiness cases. After the passage of the Jones Act, controlling case law required a seaman to elect whether he wished to pursue an unseaworthiness or a Jones Act claim.[18]

---

Circuit's decision on appeal explains that the ship owner's liability was for the "injuries appellees received," which suggests that all of the sailors were, in fact, injured. 299 F. at 55; *see also id.* at 53 (noting that the "interveners were also injured"). Further, the district court offered no independent explanation for the two sailors' award in the opinion: the district court's explanation is grouped with the compensatory reasoning that justified the award to the other sailors. And, in any case, whatever awards the sailors may, or may not, have persuaded the district court judge to award, those awards should be read in light of the Supreme Court's compensatory damages gloss provided in *Pacific Steamship* five years later. 278 U.S. at 138.

[18] The election requirement is no longer good law. *See McAllister v. Magnolia Petroleum Co.*, 357 U.S. 221, 222 n.2 (1958).

No. 12-30714

Assuming, therefore, that (1) plaintiffs were clever enough to pursue the cause of action that would maximize their recovery, and (2) punitive damages were not available in Jones Act cases,[19] the 1920-1950 explosion of Jones Act cases, when set against the dearth of unseaworthiness cases,[20] suggests that punitives were not available in unseaworthiness actions. Otherwise plaintiffs would have filed more unseaworthiness cases in search of a larger remedy.

McBride offers *no* explanation for this disparity,[21] and his attacks on the *Miles* uniformity principle do not otherwise rebut the point. We know that unseaworthiness and Jones Act negligence actions had largely the same remedies available even before we consider the *Miles* uniformity principle because injured seamen voluntarily chose to file Jones Act actions over unseaworthiness actions.

Of course, the obvious disparity between Jones Act and unseaworthiness cases does not explain *why* punitive damages were understood as not being available in unseaworthiness cases. That answer is contained within *The Osceola* and *Pacific Steamship*. When describing unseaworthiness, the *Osceola* Court observed:

---

[19] *See, e.g., Miller v. Am. President Lines. Ltd.*, 989 F.2d 1450, 1457 (6th Cir. 1993); *Kopczynski v. The Jacqueline*, 742 F.2d 555, 560-61 (9th Cir. 1984); *see also Townsend*, 557 U.S. at 426-28 (Alito, J., dissenting); *cf. Pac. S.S. Co.*, 278 U.S. at 135 (describing a Jones Act negligence action as "an action for compensatory damages, on the ground of negligence").

[20] Gilmore & Black at 327 ("The great period for Jones Act litigation was from 1920 until approximately 1950: during that period the Act was the vehicle for almost all seamen's personal injuries and death actions.").

[21] Nor, short of establishing punitive damages were available in Jones Act negligence actions, could he. Though *part* of the disparity can likely be explained by (1) the lower proximate causation requirement in Jones Act actions, (2) differences in coverage between Jones Act negligence actions and unseaworthiness actions after the Jones Act's passage, and (3) a few other litigation advantages enjoyed by the plaintiff in Jones Act cases, *see, e.g., id.*, the full breadth of the disparity—particularly given the perils of the sea and the undoubted existence of easy unseaworthiness cases—seems implausible if punitives were supposedly available in unseaworthiness cases, particularly given that a seaman's maintenance and cure claim would backstop (and therefore encourage pursuing) the somewhat riskier unseaworthiness claim.

No. 12-30714

> That the vessel and her owner are, both by English and American
> law, *liable to an indemnity* for injuries received by seamen in
> consequence of the unseaworthiness of the ship, or a failure to
> supply and keep in order the proper appliances appurtenant to the
> ship.

189 U.S. at 175 (emphasis added).

What does it mean to be "liable to an indemnity"? The specific phrase itself appears to have originated in *The Osceola*, and so it is only so helpful on its own. But *Pacific Steamship* helps to clarify that *The Osceola*'s unseaworthiness remedy is an "indemnity by way of compensatory damages." 278 U.S. at 138.[22] And that reading is, in turn, further bolstered by a broader review of damages decisions, which suggests that many contemporaneous courts understood the plaintiff's "indemnity" as being limited to compensatory damages. For example, the Supreme Court explained in *Milwaukee & St. Paul Railway v. Arms* that a court goes "beyond the limit of indemnity" when it awards "exemplary," (*i.e.*, punitive), damages. 91 U.S. 489, 493-94 (1875).[23] Multiple lower courts made similar observations on multiple occasions.[24]

---

[22] The quoted *Pacific Steamship* language also suggests that the quantum of damages available in an unseaworthiness action was identical to a Jones Act negligence case. *See Pac. S.S. Co.*, 278 U.S. at 138 ("[W]hether or not the seaman's injuries were occasioned by the unseaworthiness of the vessel or by the negligence of the master or members of the crew . . . there is but a single legal wrongful invasion of his primary right of bodily safety . . . for which he is entitled to but one indemnity by way of compensatory damages.").

[23] *See also Arms*, 91 U.S. at 492 ("It is undoubtedly true that the allowance of any thing more than an adequate pecuniary indemnity for a wrong suffered is a great departure from the principle on which damages in civil suits are awarded. But although, as a *general rule*, the plaintiff recovers merely such indemnity, yet the doctrine is too well settled now to be shaken, that exemplary damages may in certain cases be assessed.").

[24] *See, e.g.*, *Post Pub. Co. v. Peck*, 199 F. 6, 15 (1st Cir. 1912) ("There are cases in which a jury may award damages going beyond actual indemnity, going beyond actual injury, for the sake of punishing the defendant, and marking their sense of the wrong which he has committed. This is not a case of that kind."); *Christensen Eng'g Co v. Westinghouse Air Brake Co.*, 135 F. 774, 782 (2d Cir. 1905) ("It is obvious that a fine exceeding the indemnity to which the complainant is entitled is purely punitive, and, notwithstanding the foregoing precedents to the contrary, we think that when it is imposed by way of indemnity to the aggrieved party it should not exceed his actual loss incurred . . . ."); *Huber v. Teuber*, 10 D.C. 484, 489-90 (1879) ("Vindictive, punitive, or exemplary damages are sometimes allowable, not as

No. 12-30714

Given the widespread treatment of the term indemnity as excluding punitive damages, we reach the right result today by taking the *Osceola* and *Pacific Steamship* Courts at their word—as contemporaneous plaintiffs did when they filed Jones Act cases rather than unseaworthiness cases—unseaworthiness defendants are liable for an indemnity by way of compensatory damages and nothing more.

## II.

But let's assume for the moment that the foregoing is wrong, and unseaworthiness plaintiffs were entitled to punitive damages before the Jones Act. And let's also assume, contrary to the view of the majority opinion, that the narrower reading of *Miles* is right such that the remedies awarded in post-Jones Act judicial expansions of general maritime law actions should not

---

compensation to the plaintiff for his indemnity, but, over and beyond that, as punishment . . ."), *abrogated on other grounds*, *King v. Nixon*, 207 F.2d 41, 41 n.1 (D.C. Cir. 1953); *The America*, 1 F. Cas. 604, 605 (C.C.S.D.N.Y. 1874) ("It is not like the allowance of punitive damages in actions of slander, assault and battery, and like cases. It gives indemnity only."); *Jay v. Almy*, 13 F. Cas. 387, 389 (C.C.D. Mass. 1846); *Taber v. Jenny*, 23 F. Cas. 605, 609 (D. Mass 1856); *New Union Coal Co. v. Walker*, 31 S.W.2d 753, 755 (Ark. 1930); *Burt v. Shreveport Ry. Co.*, 142 La. 308, 317 (1917); *Hall v. Paine*, 112 N.E. 153, 156 (Mass. 1916); *McHargue v. Calchina*, 153 P. 99, 101 (Or. 1915); *Ill. Cent. R. C. v. Outland's Adm'x*, 170 S.W. 48, 52 (Ky. 1914); *Cudlip v. N.Y. Evening J. Pub. Co.*, 66 N.E. 662, 664 (N.Y. 1903); *Am. Credit Indem. Co v. Ellis*, 59 N.E. 679, 683 (Ind. 1901); *Socialistic Co-Operative Pub. Ass'n v. Kuhn*, 58 N.E. 649, 650 (N.Y. 1900); *Odin Coal Co. v. Denman*, 57 N.E. 192, 195 (Ill. 1900); *Jacob Tome Inst. Of Port Deposit v. Crothers*, 40 A. 261, 267 (Md. 1898); *Parker v. Forehand*, 28 S.E. 400, 401 (Ga. 1896); *Snow v. Snow*, 43 P. 620, 621-22 (Utah 1896); *U.S. Trust Co. of N.Y. v. O'Brien*, 38 N.E. 266, 267 (N.Y. 1894); *Little Pittsburg Con. Min. Co. v. Little Chief Con. Min. Co.*, 17 P. 760, 763 (Colo. 1888); *Phila., Wilmington, & Balt. R.R. Co. v. Hoeflich*, 62 Md. 300, 312 (1884) (Bryan, J., dissenting); *Hart v. Bostwick*, 14 Fla. 162, 184 (1872); *Sheffield v. Ladue*, 16 Minn. 388, 393-94 (1871); *Woodman v. Nottingham*, 49 N.H. 387, 394 (1870); *Sturges v. Keith*, 57 Ill. 451, 458 (1870); *Rose's Ex'r v. Bozeman*, 41 Ala. 678, 682 (1868); *Merchants' Bank of New Haven v. Bliss*, 35 N.Y. 412, 416 (1866); *Harrison v. Swift*, 95 Mass. 144, 144-46 (1886); *Arthur v. Wheeler & Wilson Mfg. Co.*, 12 Mo. App. 335, 341-42 (1882). To be sure, such usage was not universal, but the view of treating punitive damages as something greater than an indemnity appears to have been the majority view, *see, e.g.*, *Louisville & N.R. Co. v. Roth*, 114 S.W. 264, 266 (Ky. 1908), and the proper one in the unseaworthiness context, *see, e.g.*, *Pac. S.S. Co.*, 278 U.S. at 138 (noting that unseaworthiness plaintiffs are entitled to an "indemnity by way of compensatory damages").

exceed the remedies available in a Jones Act claim if, prior to the judicial expansion, the plaintiff would have only had a Jones Act claim. Would that mean that we should take a split-the-baby approach and make punitive damages available to an injured seaman plaintiff but only compensatory damages available to a wrongful death plaintiff on the theory that, before the Jones Act, the injured seaman would have had an unseaworthiness claim for punitive damages under general maritime law whereas the wrongful death plaintiff would have had only a Jones Act claim for compensatory damages?

No. Even if punitive damages were available in unseaworthiness actions before the Jones Act, and the Jones Act did not narrow those remedies, returning to the *Merry Shipping* rule for injured seamen plaintiffs still poses a significant *Miles* problem. Notably, the *Merry Shipping* rule does not account for the post-Jones Act expansion of unseaworthiness liability.

Congress passed the Jones Act in the wake of *The Osceola* to permit a seaman to recover for negligence. *See Miles*, 498 U.S. at 29. But at the time of the Jones Act's passage there was a degree of separation between actions cognizable in a general maritime law unseaworthiness action and a Jones Act negligence action. To be sure, though unseaworthiness actions included a "certain species of negligence" at the time the Jones Act was passed, the new Jones Act negligence claim also "include[d] several additional species [of negligence] not embraced" by a general maritime law unseaworthiness claim. *Pac. S.S. Co.*, 278 U.S. at 138. For example, *The Osceola* itself—where the plaintiff would have only had a negligence claim if such a claim were permitted under the general maritime law—demonstrates one such separation between a Jones Act negligence claim and a general maritime law unseaworthiness claim. The separations that existed at the time of the Jones Act's passage create a fatal problem for advocates of the *Merry Shipping* rule.

No. 12-30714

Since the passage of the Jones Act, courts have steadily eroded the separations between unseaworthiness claims and Jones Act negligence claims by enlarging unseaworthiness actions far beyond unseaworthiness's pre-Jones Act state.  That expansion goes far beyond merely permitting wrongful death actions for unseaworthiness.  *See, e.g.*, *Miles*, 498 U.S. at 30 (confirming the availability of wrongful death actions for unseaworthiness).    Rather, unseaworthiness has been transformed into a strict liability action, and then systematically expanded in scope so that it would now award an unseaworthiness recovery to an injured seaman who would have traditionally only had a Jones Act negligence action.[25]  And despite some fleeting judicial attempts to recabin unseaworthiness liability,[26] unseaworthiness claims and Jones Act claims can now largely be said to be "Siamese twins."[27]

This post-Jones Act expansion of unseaworthiness liability creates a *Miles* problem if punitive damages are awarded in cases where the plaintiff would have originally had only a Jones Act negligence action.  As our sister

---

[25] *See, e.g.*, *Dresser Indus., Inc. v. Webb*, 429 U.S. 1121, 1121 (1977) (Powell, J., dissenting from the denial of certiorari) ("The doctrine of 'seaworthiness,' on which this recovery was predicated, has been extended beyond all reason."); *Pope & Talbot Inc. v. Hawn*, 346 U.S. 406, 418 (1953) (Frankfurter, J., concurring) ("Since unseaworthiness affords . . . recovery without fault and has been broadly construed by the courts . . . it will be rare that the circumstances of an injury will constitute negligence but not unseaworthiness."); *Mahnich v. S. S.S. Co.*, 321 U.S. 96 (1944); George H. Chamlee, *The Absolute Warranty of Seaworthiness: A History and Comparative Study*, 24 Mercer L. Rev. 519, 542 (1973) (noting that "there is no genuine historical relationship" between modern seaworthiness doctrine and the pre-Jones Act cases); Note, *The Doctrine of Unseaworthiness in the Federal Courts*, 76 Harv. L. Rev. 819, 820 (1963) ("An unseaworthy condition can be found in almost anything, no matter how trivial, that causes injury.").

[26] *See Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494 (1971); *see also id.* at 504 (Harlan, J, dissenting) ("Much as I would welcome a thoroughgoing reexamination of the past course of developments in the unseaworthiness doctrine, I fear that the Court's action today can only result in compounding the current difficulties of the lower courts with this area of the law.")

[27] Gilmore & Black at 383; *see also id.* at 382 (noting that the Supreme Court has "made Jones Act negligence irrelevant in seamen's personal injury actions by its development of the unseaworthiness doctrine.").

No. 12-30714

circuits have concluded, the Jones Act prohibits the recovery of punitive damages in a seaman's negligence suit.[28]    Accordingly, under the prevailing understanding of unseaworthiness when the Jones Act was passed, at least a set of injured seamen would have had only a recovery for compensatory damages under the Jones Act (and not a general maritime law unseaworthiness claim).[29]    Now, however, given the expansion of unseaworthiness liability, a sizeable subset of that set of seamen would also have an unseaworthiness claim that they could pursue.  Awarding punitive damages in unseaworthiness cases to that subset of sailors under the logic of *Merry Shipping* would make a mockery of even the narrowest reading of *Miles*.

We should not, in light of *Miles*, disregard Congress's chosen remedy for negligence-type cases by expanding unseaworthiness liability into the realm of negligence, thereby permitting plaintiffs who would have had (1) no recovery at the time of *The Osceola*, and (2) only a compensatory Jones Act recovery at the time of the Jones Act, to all of a sudden recover punitive damages in unseaworthiness.    Therefore, without a way to exclude modern unseaworthiness cases that would have only been cognizable as Jones Act negligence claims at the time the Jones Act was passed, the split-the-baby solution that makes punitive damages available to injured seamen but not wrongful death plaintiffs is no solution at all.  We cannot simply return to the *Merry Shipping* rule for injured seamen as long as "[t]he reasoning of *Miles* remains strong." *Townsend*, 557 U.S. at 420.

---

[28] *See Miller*, 989 F.2d at 1457; *Kopczynski*, 742 F.2d at 560-61.  Admittedly, this is an open question in the Fifth Circuit.

[29] *See, e.g.*, *Pac. S.S. Co.*, 278 U.S. at 135 (describing a Jones Act negligence action as "an action for compensatory damages, on the ground of negligence").

No. 12-30714

### III.

Finally, we have good reason to be cautious before signing off on an aggressive expansion of punitive damages in the unseaworthiness context. The availability of insurance for punitive damages varies from jurisdiction to jurisdiction,[30] and simple logic suggests that any increased costs on shippers will be eventually passed along to consumers. Given the sizeable percentages of the world's goods that travel on ships, and the fact that the prices of the remainder of the world's goods are indirectly influenced by the prices of the goods that do travel on ships (*e.g.*, oil prices ultimately affect the price of a vast range of items), the decision in this case needs to have only the minutest impact on shipping prices to have a significant aggregate cost for consumers. In light of the potentially sizable impact, this court should not venture too far and too fast in these largely uncharted waters without a clear signal from Congress.

---

[30] *See, e.g.*, Michael A. Rosenhouse, Annotation, *Liability Insurance Coverage as Extending to Liability for Punitive or Exemplary Damages*, 16 A.L.R.4th 11 (Westlaw 2014).

31

No. 12-30714

HAYNES, Circuit Judge, joined by ELROD, Circuit Judge, concurring.

I concur in the judgment of the en banc court affirming the district court. I also concur in the reasoning expressed in the majority opinion with respect to the wrongful death and associated claims of Ms. McBride arising out of the death of Skye Sonnier. *Miles* commands this result.

The majority opinion concludes that the outcome for the Sonnier family dictates the outcome for the surviving seamen remaining in this case (Touchet and Suire). I disagree with that conclusion. An action for wrongful death (in general) did not exist at common law. *See Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 420 (2009) (explaining that there was no general common-law doctrine providing a wrongful death action); 2 BENEDICT ON ADMIRALTY § 81(a) (Joshua S. Force ed., 2013); W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 127, at 945 (5th ed. 1984). In the relevant context, *Miles* explains that it was Congress, not the courts, that created this remedy previously unavailable to the family of the deceased seaman. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 23–27 (1990) (explaining that the Court originally "held that maritime law does not afford a cause of action for wrongful death"; then "Congress enacted two pieces of legislation [(the Jones Act and DOHSA)] creating a wrongful death action for most maritime deaths"; then the Court followed suit by "creat[ing] a general maritime wrongful death cause of action"). The *Miles* Court then explained that it was limited in providing remedies to wrongful death beneficiaries under general maritime law (and not simply in unseaworthiness actions) because Congress had placed limits on the recovery that these claimants could receive: "DOHSA, by its terms, limits recoverable damages *in wrongful death suits* to *pecuniary* loss sustained by the persons for whose benefit the suit is brought. This explicit limitation forecloses recovery for nonpecuniary loss, such as loss of society, *in a general maritime*

*action.*" *Id.* at 31 (first and third emphasis added; second emphasis in original) (citation and internal quotation marks omitted); *see also Townsend*, 557 U.S. at 420 ("[I]t was only because of congressional action that a general federal cause of action for wrongful death on the high seas and in territorial waters even existed . . . .  As a result, to determine the remedies available under the common-law wrongful-death action, 'an admiralty court should look primarily to these legislative enactments for policy guidance.'" (quoting *Miles*, 498 U.S. at 27)).  Thus, unlike common law remedies which evolve through the courts, this remedy is one specifically designed and fashioned by the legislature.  It is therefore entirely logical as a matter of legal history (though not as a matter of social policy) that the family of a deceased seaman might not be able to recover punitive damages for his death, while the surviving injured seamen could.

That said, I cannot join the dissenting opinions with respect to the surviving seamen.  It is a tautology that "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).[1] That reality results in a recognition that "[t]here is no federal general common law." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Sosa v. Alvarez-Machain*, 542 U.S. 692, 729 (2004) ("[W]e now adhere to a conception of limited judicial power first expressed in reorienting federal diversity jurisdiction . . . that federal courts have no authority to derive 'general' common law." (citation omitted)).

Aside from "gap-filling" (as opposed to general) common law permitted by Congress, there are few exceptions to this rule and they come in "those [instances] in which a federal rule of decision is necessary to protect uniquely

---

[1] I do not contend that we lack jurisdiction here.  I note only that, unlike state courts with broad, general judicial power, federal courts are inherently limited in their reach.

No. 12-30714

federal interests." *See Tex. Indus. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981) (citations and internal quotation marks omitted). Because admiralty law is one of the "narrow areas" that presents "uniquely federal interests," federal courts have developed common law in this area. *Id.* at 640–41.

Such general development of the federal common law by the only unelected branch of our federal government should be done (if at all) with great restraint, as we recognized when we decided the case that became *Miles*. *See Miles v. Melrose*, 882 F.2d 976, 986 (5th Cir. 1989) ("While the liberality of admiralty proceedings informs the development of maritime jurisprudence, it does not license courts to create causes of action whenever they see fit."), *aff'd sub nom. Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990); *see also Am. Elec. Power Co. v. Connecticut*, 131 S. Ct. 2527, 2536 (2011) ("[T]he Court remains mindful that it does not have creative power akin to that vested in Congress."); *Miles*, 498 U.S. at 27 (espousing a principle of vigilant judicial restraint and deference to Congress that is to guide the exercise of federal common law authority in the maritime context). The authority to address "uniquely federal interests" should not be exercised without sufficient justification and analysis. *See, e.g.*, Daniel Stanton, Comment, *Between a Rock and a Hard Place: Maintenance and Cure in the Wake of* Atlantic Sounding, 10 LOY. MAR. L.J. 471, 481 (2012) (recognizing the dearth of legal analysis by courts that have addressed maintenance-and-cure restitution and the need to justify the remedy "with additional legal theories"). Recognition of new rights and remedies in maritime law, where appropriate at all, is appropriate only after a thorough analysis of legal, historical, and policy considerations. *See, e.g.*, *Townsend*, 557 U.S. at 409–25 (recognizing availability of punitive damages for seamen whose employers willfully fail to pay maintenance and cure only after a historical analysis of maintenance and cure and punitive damages, as well as considering the possibility of statutory preemption); *Cooper*

34

*Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 110–15 (1974) (weighing ancient admiralty doctrine and policy considerations in approving a federal right to contribution among joint tortfeasors). Additionally, here the parties have not sought and have not briefed a different treatment of one category of claimant from the other, and we should be reluctant to address such differences *sua sponte*. Considering this fact, the need to exercise restraint, and the historical context in which seamen generally have not recovered punitive damages for unseaworthiness, I think it is inappropriate for a federal intermediate appellate court to extend the law here.

As such, I conclude that Congress is the more appropriate forum to weigh competing policy concerns about the punitive damage remedy against a backdrop of hard facts and searching investigation. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 531 (1988) (Stevens, J., dissenting) ("When judges are asked to embark on a lawmaking venture, I believe they should carefully consider whether they, or a legislative body, are better equipped to perform the task at hand."); Zachary M. VanVactor, Comment, *Three's a Crowd: The Unhappy Interplay Among the New York Convention, FAA, and McCarran-Ferguson Act*, 36 TUL. MAR. L.J. 313, 336 (2011) (observing a "notion of judicial restraint" in maritime law such that "any decision of . . . magnitude or that resembles legislation by the courts should instead rest with the elected legislature"); *cf. Sosa*, 542 U.S. at 724–27 (cautioning, in law-of-nations context, that federal courts should exercise "a restrained conception of . . . discretion . . . in considering a new cause of action" and that such a decision "is one better left to legislative judgment in the great majority of cases"). As emphasized in *Miles*, "[w]e no longer live in an era when seamen and their loved ones must look primarily to the courts as a source of substantive legal protection from injury and death; Congress and the States have legislated

No. 12-30714

extensively in these areas." 498 U.S. at 27. It is Congress, not the courts, that "retains superior authority in these matters." *Id.*

The primary dissenting opinion is grounded in the view that the law already provides for this remedy pursuant to *Townsend*. *Townsend* addressed only maintenance and cure. The opinions filed in this en banc case state a scholarly basis for the analogies or lack thereof between maintenance and cure on the one hand and the causes of action at bar on the other, but no one contends they are identical. Thus, allowing recovery of punitive damages would be an expansion of a remedy, a subject best left to Congress. If a federal court is the right place to extend remedies in this area, I submit that federal court is the United States Supreme Court, not this one. The differing opinions of this court highlight the apparent tension among Supreme Court maritime precedents (primarily, *Miles* and *Townsend*), as well as the varied implications that learned jurists may draw from the relevant historical and policy considerations. This tension is between (at least) two Supreme Court precedents; ultimately, then, definitive resolution of this tension can come only from that Court, not ours. For these reasons, I join the judgment of the court expressed in the majority opinion, although, as to the remaining surviving seamen, not its reasoning.

No. 12-30714

HIGGINSON, Circuit Judge, dissenting, joined by STEWART, Chief Judge, BARKSDALE, DENNIS, PRADO, and GRAVES, Circuit Judges.

The question presented by this case is whether seamen may recover punitive damages for their employer's willful and wanton breach of the general maritime law duty to provide a seaworthy vessel. Because the Supreme Court has said that they can, and Congress has not said they can't, I would answer in the affirmative, and REVERSE.

## FACTS AND PROCEEDINGS

The consolidated cases arise out of an accident aboard Estis Rig 23, a barge supporting a truck-mounted drilling rig operating in Bayou Sorrell, a navigable waterway in Iberville Parish, Louisiana. As crew members were attempting to straighten the monkey board—the catwalk extending from the derrick—which had twisted the previous night, the derrick pipe shifted, causing the rig and truck to topple over. One crew member, Skye Sonnier, was fatally pinned between the derrick and mud tank, and three others, Saul Touchet, Brian Suire, and Joshua Bourque, have alleged injuries. At the time of the incident, Estis Well Service, L.L.C. ("Estis") owned and operated Rig 23, and employed Sonnier, Touchet, Suire, and Bourque (collectively, the "crew members").

Haleigh McBride, individually, on behalf of Sonnier's minor child, and as administratrix of Sonnier's estate, filed suit against Estis, stating causes of action for unseaworthiness under general maritime law and negligence under the Jones Act and seeking compensatory as well as "punitive and/or exemplary"

damages.[1] The other crew members filed separate actions against Estis alleging the same causes of action and requesting the same relief. Upon the crew members' motion, the cases were consolidated into a single action over which a Magistrate Judge presided with the parties' consent.[2] Estis moved to dismiss the claims for punitive damages, arguing that punitive damages are not an available remedy for unseaworthiness or Jones Act negligence as a matter of law. Treating it as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Magistrate Judge granted the motion, and correspondingly entered judgment dismissing all claims for punitive damages. Recognizing that the issues presented were "the subject of national debate with no clear consensus," the court granted plaintiffs' motion to certify the judgment for immediate appeal under 28 U.S.C. § 1292(b). This interlocutory appeal followed.

## STANDARD OF REVIEW

Whether punitive damages are an available remedy under maritime law is a question of law reviewed de novo. *See Atl. Sounding Co., Inc. v. Townsend*, 496 F.3d 1282, 1284 (11th Cir. 2007) (citations omitted), *aff'd*, 557 U.S. 404 (2009).

---

[1] "Punitive damages" and "exemplary damages" are synonymous. They reflect two principal purposes of such damages: to *punish* the wrongdoer and thereby make an *example* of him in the hopes that doing so will deter him and others from wrongdoing. David W. Robertson, *Punitive Damages in American Maritime Law*, 28 J. MAR. L. & COM. 73, 82–83 (1997). For ease of reference, I refer to all such damages as "punitive damages."

[2] In March 2012, Bourque settled his claims against Estis.

No. 12-30714

## BACKGROUND

### I.     Sources of maritime law

There are two primary sources of federal maritime law: common law developed by federal courts exercising the maritime authority conferred on them by the Admiralty Clause of the Constitution ("general maritime law"), and statutory law enacted by Congress exercising its authority under the Admiralty Clause and the Commerce Clause ("statutory maritime law"). *See* U.S. CONST. art. III, § 2, cl. 1 (extending the judicial power of the United States "to all [c]ases of admiralty and maritime [j]urisdiction"); *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 360–61 (1959) (explaining that the Admiralty Clause "empowered the federal courts in their exercise of the admiralty and maritime jurisdiction which had been conferred on them, to draw on the substantive law 'inherent in the admiralty and maritime jurisdiction,' [] to continue the development of this law within constitutional limits[,]" and "empowered Congress to revise and supplement the maritime law within the limits of the Constitution") (citation omitted).[3]

### II.     Causes of action under maritime law

Traditionally, general maritime law afforded ill and injured seamen two causes of action against shipowners and employers. If a seaman became ill or injured while in the service of the ship, the seaman's employer and the ship's owner owed the seaman room and board ("maintenance") and medical care ("cure") without regard to fault, and, if not provided, the seaman had a claim

---

[3] For a discussion of the division of maritime rulemaking authority between Congress and the federal courts, see David W. Robertson, *Our High Court of Admiralty and Its Sometimes Peculiar Relationship With Congress*, 55 St. Louis U. L.J. 491, 494–513 (2011).

against them for "maintenance and cure." If a seaman was injured by a ship's operational unfitness, the seaman had a cause of action for "unseaworthiness." General maritime law did not provide seamen with a separate cause of action for personal injury resulting from employer negligence, *The Osceola*, 189 U.S. 158, 175 (1903), nor did it permit wrongful death or survival claims on behalf of seamen killed during the course of their employment, *The Harrisburg*, 119 U.S. 199, 204–14 (1886), *overruled by Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970).

To remedy those perceived gaps in general maritime law, which, until then, had been filled by a patchwork of state wrongful death statutes,[4] Congress in 1920 enacted the Jones Act and the Death on the High Seas Act ("DOHSA"), which created causes of action for employer negligence in navigable waters and on the high seas, respectively, and authorized survival and wrongful death remedies. *See* 46 U.S.C. § 688 (1920) (codified as amended at 46 U.S.C. § 30104 (2006));[5] 46 U.S.C. §§ 761–68 (1920) (codified as amended

---

[4] "These statutes were often unwieldy and not designed to accommodate maritime claims; moreover, because they varied from state to state, the representatives of similarly situated deceased seamen might be awarded widely varying sums based on the fortuity of whether the accident occurred within or without the three-mile limit and, if it were within that limit, based on the laws of the particular state where the casualty occurred." *Ivy v. Security Barge Lines, Inc.*, 606 F.2d 524, 527 (5th Cir. 1979).

[5] The Jones Act provides, in pertinent part:

A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.
46 U.S.C. § 30104.

at 46 U.S.C. §§ 30301–08 (2006)).[6] The Supreme Court has since recognized a parallel cause of action under general maritime law for employer negligence resulting in injury or death. *See Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 818–20 (2001) (citing *Moragne*, 398 U.S. at 409).

## III.  Punitive damages under maritime law

"Historically, punitive damages," though not always designated as such,[7] "have been available and awarded in general maritime actions." *Townsend*, 557 U.S. at 407; *see also id.* at 414 (citing as examples of early punitive damages awards *The City of Carlisle*, 39 F. 807, 817 (D. Or. 1889) (adding $1,000 to plaintiff's damages award for "gross neglect and cruel maltreatment"), and *The Troop*, 118 F. 769, 770–771, 773 (D. Wash. 1902) (concluding that $4,000 was a reasonable award because the captain's "failure to observe the dictates of humanity" and obtain prompt medical care for an injured seaman constituted a "monstrous wrong")). In the early nineteenth century, Justice Story spoke of

---

[6] DOHSA provides, in pertinent part:

> When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative.

46 U.S.C. § 30302.

[7] *See Townsend*, 557 U.S. at 414 n.3 (citing awards of punitive damages in early maritime cases and pointing out that "[a]lthough these cases do not refer to 'punitive' or 'exemplary' damages, scholars have characterized the awards authorized by these decisions as such"); Robertson, *Punitive Damages in American Maritime Law, supra*, at 88 (noting that eighteenth and nineteenth century maritime courts used a variety of terms to designate damages intended to punish and deter).

No. 12-30714

maritime punitive damages as "the proper punishment which belongs to [] lawless misconduct." *The Amiable Nancy*, 16 U.S. (3 Wheat.) 546, 558 (1818).

Over the next century and a half, the availability of punitive damages for unseaworthiness claims arising under general maritime law was largely unquestioned. In *Complaint of Merry Shipping, Inc.*, 650 F.2d 622, 623 (5th Cir. Unit B Jul. 1981), our court confirmed the prevailing view that "punitive damages may be recovered under general maritime law upon a showing of willful and wanton misconduct by the shipowner in the creation or maintenance of unseaworthy conditions." Our court based its holding on the historical availability of punitive damages under general maritime law, the public policy interests in punishing willful violators of maritime law and deterring them from committing future violations, and the uniformity of contemporary courts on the issue. *Id.* at 624–26.[8] After *Merry Shipping*, the Ninth and Eleventh Circuits followed suit. *See Evich v. Morris*, 819 F.2d 256, 258 (9th Cir. 1987) ("Punitive damages are available under general maritime law for claims of unseaworthiness.") (citations omitted); *Self v. Great Lakes Dredge & Dock Co.*, 832 F.2d 1540, 1550 (11th Cir. 1987) ("Punitive damages

---

[8] At the time *Merry Shipping* was decided, the Second and Sixth Circuits had held that punitive damages were available in unseaworthiness actions, and no circuit court had ruled otherwise. *See In re Marine Sulphur Queen*, 460 F.2d 89, 105 (2d Cir. 1972) (noting, in the unseaworthiness context, that "the award of punitive damages is discretionary with the trial court[,]" and "[a] condition precedent to awarding them is a showing by the plaintiffs that the defendant was guilty of gross negligence, or actual malice or criminal indifference which is the equivalent of reckless and wanton misconduct") (citations omitted); *U.S. Steel Corp. v. Fuhrman*, 407 F.2d 1143, 1148 (6th Cir. 1969) (noting that punitive damages are recoverable against a ship owner for the actions of a master if "the owner authorized or ratified the acts of the master" or "the owner was reckless in employing him") (citations omitted).

should be available in cases where the shipowner willfully violated the duty to maintain a safe and seaworthy ship . . . .").

In *Miles v. Melrose*, 882 F.2d 976, 989 (5th Cir. 1989) (citations omitted), we reiterated that "[p]unitive damages are recoverable under the general maritime law 'upon a showing of willful and wanton misconduct by the shipowner' in failing to provide a seaworthy vessel[,]" but held, for the first time, that loss of society damages were not available to nondependent parents in a general maritime cause of action for the wrongful death of a Jones Act seaman.[9] Judge Rubin, speaking for the court, was guided by the "twin aims of maritime law": "achieving uniformity in the exercise of admiralty jurisdiction and providing special solicitude to seamen." *Id.* at 987. It would be anomalous, the court reasoned, if a wrongful death claimant were permitted to recover for loss of society damages under general maritime law even though the claimant was barred from recovering such damages under statutory maritime law. *Id.* at 987–88. And the goal of providing special solicitude to seamen, the wards of admiralty, "would not be furthered in any meaningful way by allowing nondependent parents to recover for loss of society." *Id.* at 988; *see also id.* ("Admiralty cannot provide the parents solicitude at a voyage's outset when their right to recover for loss of society is dependent on the fortuity that the deaths occur in territorial waters and are caused by unseaworthiness."

---

[9] A "Jones Act seaman" is "a master or member of a crew of any vessel," *Stewart v. Dutra Const. Co.*, 543 U.S. 481, 488 (2005) (internal quotation marks omitted) (citations omitted), as distinguished from a "*Sieracki* seaman," which refers to a longshoreman or harborworker who is injured on a vessel while performing traditional work of a seaman and, by virtue of *Seas Shipping Co. v. Sieracki*, 328 U.S. 85 (1946), may bring a claim for unseaworthiness, *Burks v. Am. River Transp. Co.*, 679 F.2d 69, 71, 71 n.1 (5th Cir. 1982), *abrogated on other grounds by Lozman v. City of Riviera Beach, Fla.*, 133 S. Ct. 735 (2013).

No. 12-30714

(quoting *Sistrunk v. Circle Bar Drilling Co.*, 770 F.2d 455, 460 (5th Cir. 1985))
(emphases omitted).

The Supreme Court affirmed in a decision most significant for its
announcement of a new age of maritime law:

> We no longer live in an era when seamen and their loved ones must
> look primarily to the courts as a source of substantive legal
> protection from injury and death; Congress and the States have
> legislated extensively in these areas. In this era, an admiralty
> court should look primarily to these legislative enactments for
> policy guidance. We may supplement these statutory remedies
> where doing so would achieve the uniform vindication of such
> policies consistent with our constitutional mandate, but we must
> also keep strictly within the limits imposed by Congress. Congress
> retains superior authority in these matters, and an admiralty
> court must be vigilant not to overstep the well-considered
> boundaries imposed by federal legislation. These statutes both
> direct and delimit our actions.

*Miles v. Apex Marine Corp.* (*"Miles"*), 498 U.S. 19, 27 (1990); *see also id.* at 36
("We sail in occupied waters. Maritime tort law is now dominated by federal
statute, and we are not free to expand remedies at will simply because it might
work to the benefit of seamen and those dependent upon them."). Analyzing
the issue presented with this guiding principle in mind, the Court reasoned
that because DOHSA, by its terms, limits damages recovery to "pecuniary
loss," *id.* at 31 (citation omitted), and the same limitation had been
incorporated into the Jones Act, *id.* at 32,[10] non-pecuniary damages, such as

---

[10] This pecuniary-loss limitation arose out of the Jones Act's incorporation of the
remedial provisions of the Federal Employers' Liability Act ("FELA"), 46 U.S.C. § 30104
("Laws of the United States regulating recovery for personal injury to, or death of, a railway
employee apply to an action under this section."), which, at the time the Jones Act was
enacted, had been interpreted by the Supreme Court to limit recovery to compensation for
"pecuniary" damages, *Mich. Cent. R.R. Co. v. Vreeland*, 227 U.S. 59, 68 (1913) ("[FELA limits]

No. 12-30714

loss of society damages, should not be recoverable in a parallel cause of action for the wrongful death of a Jones Act seaman under general maritime law, *id.* at 33. "It would be inconsistent with our place in the constitutional scheme," the Court in *Miles* concluded, "were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence." *Id.* at 32–33.

*Miles* addressed the availability of loss of society damages to non-seamen under general maritime law, not punitive damages, but the general principle asserted in its analysis—that if a category of damages is unavailable under a maritime cause of action established by statute, it is similarly unavailable for a parallel claim brought under general maritime law—began to be extended by lower courts to cover punitive damages claims by seamen. *See, e.g., Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450, 1454–59 (6th Cir. 1993).

Similarly applying the "*Miles* uniformity principle," as it came to be known, our court, sitting en banc, held that *Miles* "effectively overruled" *Merry Shipping*, concluding that "punitive damages [are not] available in cases of willful nonpayment of maintenance and cure under the general maritime law." *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1513 (5th Cir. 1995) (en banc), *abrogated by Atl. Sounding Co. v. Townsend*, 557 U.S. 404 (2009). The court reasoned that because punitive damages, which are "rightfully classified

---

liability [to] the loss and damage sustained by relatives dependent upon the decedent. It is therefore a liability for the pecuniary damage resulting to them, and for that only."). *But see Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 424 fn.12 (2009) ("Because we hold that *Miles* does not render the Jones Act's damages provision determinative of respondent's remedies, we do not address the dissent's argument that the Jones Act, by incorporating the provisions of the Federal Employers' Liability Act, see 46 U.S.C. § 30104(a), prohibits the recovery of punitive damages in actions under that statute.").

as non-pecuniary," are not an available remedy for personal injury to a seaman under the Jones Act, they likewise are not an available remedy for personal injury to a seaman, including injury resulting from a maintenance and cure violation, under the general maritime law. *Id.* at 1506–07, 1510–12.[11] The court in *Guevara* did not address the availability, post-*Miles*, of punitive damages in unseaworthiness actions; it restricted its discussion to the availability of such damages in the maintenance and cure context. *Id.* at 1499. But it was perceived by some to "portend[] the disappearance of punitive damages from the entire body of maritime law." Robertson, *Punitive Damages in American Maritime Law*, *supra*, at 154 (collecting cases).

Momentum in that direction was sea-tossed by *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 424 (2009), which explicitly abrogated *Guevara* and restored the availability of punitive damages for maintenance and cure claims under general maritime law. The Supreme Court reasoned that "punitive damages have long been an accepted remedy under general maritime law," including for egregious maintenance and cure violations, and concluded, contrary to *Guevara*, that "nothing in the Jones Act altered this understanding." *Id.* at 424. The Jones Act, the Court reminded, "created a statutory cause of action for negligence, but it did not eliminate pre-existing

---

[11] The court in *Guevara* went on to hold, in addition, that punitive damages are not available for the willful and wanton refusal to pay maintenance and cure even when personal injury does not result. *Id.* at 1512. The court noted that it was not constrained by the *Miles* uniformity principle in its second inquiry because there was no overlap between statutory and general maritime law: neither the Jones Act nor DOHSA, as does the general maritime law, provides for a cause of action for maintenance and cure not resulting in personal injury. *Id.* The court nevertheless exercised its maritime authority to bar punitive damages in such actions as a matter of policy. *Id.* at 1513.

remedies available to seamen for the separate common-law cause of action based on a seaman's right to maintenance and cure." *Id.* at 415–16. Importantly, Justice Thomas writing for the Court reminded that "[i]ts purpose was to enlarge [seamen's] protection, not to narrow it." *Id.* at 417 (citations omitted). Indeed, the Court noted, the Jones Act specifically preserved the seaman's right to "elect" between the remedies provided by the Jones Act and those recoverable under pre-existing general maritime law; "[i]f the Jones Act had been the only remaining remedy available to injured seamen, there would have been no election to make." *Id.* at 416.[12]

The Supreme Court clarified that its interpretation of *Miles* did *not* represent an "'abrup[t]' change of course." *Id.* at 422 n.8, 418–22. Rather, the Court explained, reliance on the *Miles* uniformity principle to bar punitive damages recovery under general maritime causes of action would read *Miles* "far too broad[ly]." *Id.* at 418–19. *Miles*, which addressed loss of society damages in maritime wrongful death actions, presented an issue of a different nature than the one presented in *Townsend*, which addressed punitive damages in the maintenance and cure setting:

> Unlike the situation presented in *Miles*, both the general maritime cause of action (maintenance and cure) and the remedy (punitive damages) were well established before the passage of the Jones Act. Also unlike the facts presented by *Miles*, the Jones Act does not address maintenance and cure or its remedy. It is therefore

---

[12] As further evidence that punitive damages "remain[ed] available in maintenance and cure actions after the [Jones] Act's passage," the Court pointed out that in *Vaughan v. Atkinson*, 369 U.S. 527, 529–31 (1962), it "permitted the recovery of attorneys' fees [as a punitive sanction] for the 'callous' and 'willful and persistent' refusal to pay maintenance and cure." *Townsend*, 557 U.S. at 417.

No. 12-30714

possible to adhere to the traditional understanding of maritime actions and remedies without abridging or violating the Jones Act; unlike wrongful-death actions, this traditional understanding is not a matter to which "Congress has spoken directly." Indeed, the *Miles* Court itself acknowledged that "[t]he Jones Act evinces no general hostility to recovery under maritime law," and noted that statutory remedy limitations "would not necessarily deter us, if recovery . . . were more consistent with the general principles of maritime tort law." The availability of punitive damages for maintenance and cure actions is entirely faithful to these "general principles of maritime tort law," and no statute casts doubt on their availability under general maritime law.

*Id.* at 420–21 (citations omitted). Thus, it concluded more generally, "[t]he laudable quest for uniformity in admiralty does not require the narrowing of available damages to the lowest common denominator approved by Congress for distinct causes of action." *Id.* at 424.[13]

---

[13] This shift from *Miles* to *Townsend* was foreshadowed in *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), which presented the issue of whether the Clean Water Act ("CWA") implicitly preempted maritime causes of action by fishermen, Alaska Natives, and others with property rights in the resources of the ocean. 554 U.S. at 484–89. The Court concluded that the CWA did not preempt plaintiffs' claims, reasoning: "we find it too hard to conclude that a statute expressly geared to protecting 'water,' 'shorelines,' and 'natural resources' was intended to eliminate *sub silentio* oil companies' common law duties to refrain from injuring the bodies and livelihoods of private individuals." *Id.* at 488–89. In so ruling, the Court sounded a different tune on statutory displacement of general maritime law:

> To be sure, "Congress retains superior authority in these matters," and "[i]n this era, an admiralty court should look primarily to these legislative enactments for policy guidance." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 27 (1990). But we may not slough off our responsibilities for common law remedies because Congress has not made a first move, and the absence of federal legislation constraining punitive damages does not imply a congressional decision that there should be no quantified rule.

*Id.* at 508 n.21 (citation omitted). This sentiment was echoed in *Townsend*: "Although 'Congress . . . is free to say this much and no more,' *Miles*, 498 U.S., at 24, 111 S. Ct. 317 (internal quotation marks omitted), we will not attribute words to Congress that it has not written." *Townsend*, 557 U.S. at 424.

No. 12-30714

## DISCUSSION

The crux of this dispute lies in the parties' competing theories of statutory displacement of general maritime law.

The crew members read *Miles* and *Townsend* as providing, narrowly, that federal courts, in exercising their maritime lawmaking authority, cannot authorize a more expansive remedy for a general maritime cause of action than exists for a parallel statutory maritime cause of action if, at the time the statutory cause of action or remedy was enacted, the parallel cause of action or remedy did not exist under general maritime law. Applying that principle, they urge that punitive damages remain available as a remedy for the general maritime law cause of action for unseaworthiness because, as Justice Thomas highlighted for the Court in *Townsend*, like maintenance and cure, unseaworthiness was established as a cause of action before the passage of the Jones Act, courts traditionally awarded punitive damages under general maritime law, and the Jones Act does not address unseaworthiness or purport to limit its remedies.

Estis reads those cases as providing, more broadly, that where claimants seek redress for a type of harm compensable under both general and statutory maritime law, they are limited in their recovery to the class of damages authorized by the Jones Act and DOHSA regardless of the claim's history and without need for explicit Congressional recalibration. That is, punitive damages are available only where there is no remedial overlap between past general and never displaced statutory maritime claims because according to Estis, "the Jones Act and unseaworthiness claims constitute a single cause of action with a single set of remedies." In Estis's view, punitive damages were available in *Townsend*, but not *Miles*, because the *Miles* plaintiffs sought

49

redress for physical injury and wrongful death, harms now compensable only under statutory maritime law, whereas the *Townsend* plaintiffs sought redress for harm caused by wrongful deprivation of maintenance and cure that did not result in physical injury, a type of harm compensable under general maritime law but not under statutory maritime law, which does not separately provide for a cause of action for maintenance and cure or a remedy for its deprivation. Applying that reasoning here, Estis argues that because the crew members seek redress for wrongful death and personal injuries arising from a maritime accident—types of harm compensable under statutory maritime law—and punitive damages are not available under statutory maritime law, punitive damages are not available in the present action.

1.

To start, Estis's argument that Jones Act claims and unseaworthiness claims are but one collides with the Supreme Court's decision in *Usner v. Luckenbach Overseas Corp.*, which explained:

> A major burden of the Court's decisions spelling out the nature and scope of the cause of action for unseaworthiness has been insistence upon the point that it is a remedy separate from, independent of, and additional to other claims against the shipowner, whether created by statute or under general maritime law.

400 U.S. 494, 498 (1971) (footnotes omitted) (emphasis added); *see also Brunner v. Maritime Overseas Corp.*, 779 F.2d 296, 298 (5th Cir. 1986) (recognizing in section of opinion entitled "Separate Causes of Action" that "[t]he history of the unseaworthiness claim shows that it developed independently of Jones Act negligence and has been treated as a separate cause of action ever since").

No. 12-30714

To the extent that Estis's focus is on the case's factual setting and not the specific cause of action alleged, Estis's proposed test for determining whether the *Miles* uniformity principle limits the damages recoverable in a maritime case mirrors the one previously adopted by our en banc court in *Guevara*:

> In order to decide whether (and how) *Miles* applies to a case, a court must first evaluate the factual setting of the case and determine what statutory remedial measures, if any, apply in that context. If the situation is covered by a statute like the Jones Act or DOHSA, and the statute informs and limits the available damages, the statute directs and delimits the recovery available under the general maritime law as well.

59 F.3d at 1506 (emphasis omitted). Estis highlights this congruity and argues that although *Guevara*'s holding that punitive damages are unavailable in actions for maintenance and cure was overruled by *Townsend*, *Guevara*'s guidance on how to apply the *Miles* uniformity principle remains intact.

I would disagree. *Townsend* abrogated *Guevara*'s holding because of *Guevara*'s interpretation of *Miles*, not in spite of it. The petitioners in *Townsend* urged the Supreme Court to adopt the factual setting approach of *Guevara*, but the Court in *Townsend* declared that reading was "far too broad." 557 U.S. at 419. That approach, the Court went on, "would give greater pre-emptive effect to the Act than is required by its text, *Miles*, or any of this Court's other decisions interpreting the statute." *Id.* at 424–25. Indeed, the Court noted, it had already rejected that view in *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 818 (2001), an intervening case holding that a wrongful death remedy is available under general maritime law for the death of a harborworker attributable to negligence, even though "neither the Jones Act (which applies only to seamen) nor DOHSA (which does not cover

51

territorial waters) provided such a remedy." *Townsend*, 557 U.S. at 421 (citations omitted). The broader point made in *Townsend*, which I would heed today, is that "[t]he laudable quest for uniformity in admiralty does not require the narrowing of available damages to the lowest common denominator approved by Congress for distinct causes of action." *Id.* at 424.

To give effect to that principle, *Townsend* established a straightforward rule, fully faithful to its earlier *Miles* decision: if a general maritime law cause of action and remedy were established before the passage of the Jones Act, and the Jones Act did not address that cause of action or remedy, then that remedy remains available under that cause of action unless and until Congress intercedes.[94] Estis did not dispute that the rule's premises are satisfied in this case: the cause of action (unseaworthiness) and the remedy (punitive damages) were both established before the passage of the Jones Act, and that statute did not address unseaworthiness or its remedies; indeed, the Supreme Court has

---

[94] *Id.* at 414–15 ("The settled legal principles discussed above establish three points central to resolving this case. First, punitive damages have long been available at common law. Second, the common-law tradition of punitive damages extends to maritime claims. And third, there is no evidence that claims for maintenance and cure were excluded from this general admiralty rule. Instead, the pre-Jones Act evidence indicates that punitive damages remain available for such claims under the appropriate factual circumstances. As a result, respondent is entitled to pursue punitive damages unless Congress has enacted legislation departing from this common-law understanding. As explained below, it has not.") (footnote omitted); *id.* at 420 ("Unlike the situation presented in *Miles*, both the general maritime cause of action (maintenance and cure) and the remedy (punitive damages) were well established before the passage of the Jones Act. Also unlike the facts presented by *Miles*, the Jones Act does not address maintenance and cure or its remedy. It is therefore possible to adhere to the traditional understanding of maritime actions and remedies without abridging or violating the Jones Act.") (citations and footnote omitted); *id.* at 424 ("Because punitive damages have long been an accepted remedy under general maritime law, and because nothing in the Jones Act altered this understanding, such damages for the willful and wanton disregard of the maintenance and cure obligation should remain available in the appropriate case as a matter of general maritime law.").

been clear that the Jones Act enlarged seamen's protection.[95] Seeking to avoid the conclusion that follows, Estis attempts to distinguish *Townsend*.

Estis contends, and the Majority Opinion accepts, that finding punitive damages available would overrule *Miles*. This view overbroadly construes *Miles* to require uniform displacement even as to preexisting causes of action

---

[95] To the extent that Estis does argue that historically, punitive damages have been unavailable as a remedy for unseaworthiness, it misses the point of *Townsend*. *Townsend* established that "the common-law tradition of punitive damages extends to maritime claims." *Townsend*, 557 U.S. at 414; *see also id.* at 424 ("Because punitive damages have long been an accepted remedy under general maritime law, and because nothing in the Jones Act altered this understanding . . . ."). Just as in *Townsend*, Estis provides no evidence that claims for unseaworthiness "were excluded from this general admiralty rule." *Id.* at 415. At best, Estis's historical review matches that of the dissent in *Townsend*. In *Townsend*, however, Justice Thomas dismissed historical ambiguity in a footnote worth reproducing here:

> The dissent correctly notes that the handful of early cases involving maintenance and cure, by themselves, do not definitively resolve the question of punitive damages availability in such cases. However, it neglects to acknowledge that the general common-law rule made punitive damages available in maritime actions. Nor does the dissent explain why maintenance and cure actions should be excepted from this general rule. It is because of this rule, and the fact that these early cases support-rather than refute-its application to maintenance and cure actions, that the pre-Jones Act evidence supports the conclusion that punitive damages were available at common law where the denial of maintenance and cure involved wanton, willful, or outrageous conduct.

*Id.* at 414 n.4 (internal citations omitted). Accordingly, *Townsend* makes clear that in the face of historical dispute, the default rule of punitive damages applies.

The Concurring Opinion of 5 colleagues ("Concurring Op."), however, finds *Townsend* to be a "thin strand" offering only "minimal support." Concurring Op. 2. But Justice Thomas did not limit his historical review to maintenance and cure claims; the Court instead clarified that "[t]he general rule that punitive damages were available at common law extended to claims arising under federal maritime law." *Id.* at 411 (section "II.B" of the opinion). Respectfully, the Concurring Opinion's criticism that I should not "blithely assume" that punitive damages were available for claims arising under the general maritime law is directed at Section II.B of Justice Thomas's majority opinion, a point he deemed "central to resolving this case." *Id.* at 414-15; Concurring Op. at 5.

or remedies without clear statutory language or intent.[96] This was an expansion taken in *Guevara*, then constrained by the Supreme Court in *Townsend*. The Supreme Court did not touch punitive damages in *Miles*; indeed, our court asserted the *availability* of punitive damages for unseaworthiness claims yet the Supreme Court *certiorari* grant and opinion did not encompass or alter that holding. *See Miles*, 882 F.2d at 989. Indeed, the Court in *Miles* itself noted that a plaintiff may recover for pain and suffering, damages framed as nonpecuniary. *Miles*, 498 U.S. at 22.[97] Moreover, *Townsend* declined to reach whether punitive damages are available under the Jones Act:

> Because we hold that *Miles* does not render the Jones Act's damages provision determinative of respondent's remedies, we do not address the dissent's argument that the Jones Act, by incorporating the provisions of the Federal Employers' Liability Act, see 46 U.S.C. § 30104(a), prohibits the recovery of punitive damages in actions under that statute.

---

[96] The Majority Opinion frames *Miles* as involving a "wrongful death" action. Maj. Op. 7. This framing, however, misplaces "wrongful death" in *Townsend*'s analysis, which asks whether the cause of action and the remedy were well established before the Jones Act. *Townsend*, 557 U.S. at 420–21. Unseaworthiness is the underlying *cause of action* relevant to *Townsend*'s analysis. The Majority Opinion acknowledges this when describing *Miles*'s holding: "the Court considered the issue presented directly in this case: the scope of the survivor's recovery in her *general maritime law/unseaworthiness action* for wrongful death." Maj. Op. 7-8 (emphasis added). I agree with this description of *Miles*: the general maritime cause of action is unseaworthiness (an action that no one disputes was well established before the Jones Act), and the question remains as to what remedies are available to a plaintiff who brings an unseaworthiness claim. As to the remedy in this case, punitive damages, *Townsend* announced the default rule that punitive damages are available for actions under the general maritime law (such as unseaworthiness). Decisively, *Townsend* dismissed the argument that "[*Miles*] limited recovery in maritime cases *involving death* or personal injury to the remedies available under the Jones Act and the Death on the High Seas Act (DOHSA)," as reading *Miles* "far too broad[ly]." *Townsend*, 557 U.S. at 418 (emphasis added).

[97] We recognized this in our opinion as well. *Miles*, 882 F.2d at 985.

557 U.S. at 424 n.12. If Estis's argument adopted in the Majority Opinion is correct that *Miles* directly forecloses the availability of punitive damages for unseaworthiness claims, then *Miles* would have closed the same question as applied to Jones Act claims without need for this exact qualification.

Estis attempts to distinguish *Townsend* on the ground that it involved a maintenance and cure claim, as opposed to an unseaworthiness claim. It is true that unseaworthiness claims are more closely related to negligence claims than they are to maintenance and cure claims. But as we noted in *Guevara*—the primary case upon which Estis relies—the displacement analysis for unseaworthiness claims is "wholly applicable to maintenance and cure cases as well." *Guevara*, 59 F.3d at 1504. Indeed, if the decisive paragraph in *Townsend* were amended by replacing "maintenance and cure" with "unseaworthiness," it would retain its persuasive force:

> Unlike the situation presented in *Miles*, both the general maritime cause of action ([unseaworthiness]) and the remedy (punitive damages) were well established before the passage of the Jones Act. Also unlike the facts presented by *Miles*, the Jones Act does not address [unseaworthiness] or its remedy. It is therefore possible to adhere to the traditional understanding of maritime actions and remedies without abridging or violating the Jones Act; unlike wrongful-death actions, this traditional understanding is not a matter to which "Congress has spoken directly." Indeed, the *Miles* Court itself acknowledged that "[t]he Jones Act evinces no general hostility to recovery under maritime law," and noted that statutory remedy limitations "would not necessarily deter us, if recovery . . . were more consistent with the general principles of maritime tort law." The availability of punitive damages for [unseaworthiness] actions is entirely faithful to these "general principles of maritime tort law," and no statute casts doubt on their availability under general maritime law.

*Townsend*, 557 U.S. at 420–21 (citations omitted).

No. 12-30714

Estis argues also that the "chronological" framework announced in *Townsend* is inapt because of the evolution of claims of unseaworthiness. Unlike maintenance and cure, which has remained unchanged in substance for centuries, the claim of unseaworthiness has evolved over the years. Although it was well established before the passage of the Jones Act, it did not become a strict liability claim until 1944, *Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 100 (1944), and was not available to seamen killed during the course of their employment until 1970, *Moragne*, 398 U.S. at 409.

I agree that this case differs from *Townsend* in that respect. That is, punitive damages for the willful violation of the duty to provide maintenance and cure appear to have been available, if sparingly awarded, during the pre-Jones Act era. *See Townsend*, 557 U.S. at 414 (citing *The City of Carlisle*, 39 F. at 809, 817 and *The Troop*, 118 F. at 770–71, 773). It is less clear whether punitive damages were awarded for unseaworthiness violations during that period. *See supra* note 15. The parties did not brief this point to the panel, perhaps respectful of the Supreme Court's determination of the issue in *Townsend. See Townsend*, 557 U.S. at 408–15 (section II of the Court's opinion). This distinction, if factually supported and not foreclosed by the Supreme Court, would change the inquiry: the question would not be whether the Jones Act was intended to displace existing remedies, but whether it was meant to foreclose future remedies. But the outcome would be the same.

Our task is not to reconstruct maritime law as it existed in 1920, but to assess whether Congress, in passing the Jones Act and DOHSA, intended to displace pre-existing maritime remedies or foreclose them going forward. *See Townsend*, 557 U.S. at 419–25. Let us assume for the sake of argument, contrary to *Townsend*, that maritime courts during the pre-Jones Act era had

No. 12-30714

taken no position on the propriety of punitive damages in unseaworthiness actions; that Congress in 1920 was painting on a blank canvas. Had Congress "spoken directly" on the matter, then I would follow its guidance. *Townsend*, 557 U.S. at 420–21; *Miles*, 498 U.S. at 27, 32–33. But the Jones Act does not mention unseaworthiness or its remedies nor has any legislative history to that effect been urged or identified to us. 46 U.S.C. § 30104. And "a remedial omission in the Jones Act is not evidence of considered congressional policymaking that should command our adherence in analogous contexts." *Am. Export Lines, Inc. v. Alvez*, 446 U.S. 274, 283–84 (1980); *see also id.* at 282 ("Nor do we read the Jones Act as sweeping aside general maritime law remedies."). Similarly, "no intention appears that [DOHSA] ha[d] the effect of foreclosing any nonstatutory federal remedies that might be found appropriate to effectuate the policies of general maritime law." *Moragne*, 398 U.S. at 400. Given that "the absence of federal legislation constraining punitive damages does not imply a congressional decision that there should be no quantified rule," *Baker*, 554 U.S. at 508 n.21, it follows that the matter remained open after the Jones Act and DOHSA. We resolved it in *Merry Shipping* when we held that punitive damages *were* an appropriate remedy to effectuate the policies of general maritime law, *see Merry Shipping*, 650 F.2d at 625–26, a view shared then and since by other circuit courts. *See, e.g.*, cases cited *supra* note 8. The Majority Opinion strongly implies but never asserts directly that the Jones Act did in fact address unseaworthiness and its remedies. The Majority Opinion distinguishes *Townsend* because "[u]nlike the seaman's remedy for damages based on negligence *and unseaworthiness*, 'the Jones Act does not address maintenance and cure or its remedy.'" Maj. Op. 12 (emphasis added). As discussed, no party has taken the position that the Jones Act

57

No. 12-30714

addresses unseaworthiness or its remedies, likely because this interpretation of the Jones Act lacks support and, indeed, contradicted by the Supreme Court in *Usner*. *See Chisholm v. Sabine Towing & Transp. Co., Inc.*, 679 F.2d 60, 62 (5th Cir. 1982); *Usner*, 400 U.S. at 498; *Brunner*, 779 F.2d at 298.

Estis goes on to argue that allowing seamen to recover punitive damages under general maritime law would create a number of anomalies. Though one acknowledged function of maritime courts is to reconcile anomalies that present themselves in the law, *e.g.*, *Moragne*, 398 U.S. at 395–409 (overruling *The Harrisburg*, 119 U.S. at 205 to remedy three maritime law anomalies), I perceive no anomalies.

Estis argues that this approach would allow plaintiffs to circumvent the pecuniary damages limitation in the Jones Act by pleading a claim for unseaworthiness. This is not an anomaly, as the Supreme Court has highlighted; it is a traditional feature of maritime law designed to protect seamen, the wards of admiralty.[98] By design, seamen have always had the "right to choose among overlapping statutory and common-law remedies" for their injuries. *Townsend*, 557 U.S. at 423 (citation omitted); *see also Cortes v. Baltimore Insular Lines*, 287 U.S. 367, 374–75 (1932) (A seaman's "cause of action for personal injury created by the [Jones Act] may have overlapped his cause of action for breach of the maritime duty of maintenance and cure, just as it may have overlapped his cause of action for injury caused through an

---

[98] Seamen have long been characterized as "wards of admiralty" deserving special protection under maritime law. *See, e.g.*, *Townsend*, 557 U.S. at 417 (noting that seamen are "peculiarly the wards of admiralty"); *Robertson v. Baldwin*, 165 U.S. 275, 287 (1897) ("The ancient characterization of seamen as 'wards of admiralty' is even more accurate now than it was formerly.").

unseaworthy ship. In such circumstances it was his privilege, in so far as the causes of action covered the same ground, to sue indifferently on any one of them.") (citations omitted); *Hlodan v. Ohio Barge Line, Inc.*, 611 F.2d 71, 75 (5th Cir. 1980) ("[A] Jones Act claim may be joined with a wrongful death claim for nonpecuniary damages based on general maritime law, where the incident does not arise on the high seas, and that nonpecuniary damages may be recovered under the unseaworthiness claim.") (citations omitted). That a violation of the unseaworthiness duty "may also give rise to a Jones Act claim is significant only in that it requires admiralty courts to ensure against double recovery." *Townsend*, 557 U.S. at 423 n.10 (citation omitted).

Estis argues, similarly, that it would be anomalous for the law to allow different remedies for what amounts to the same cause of action. It is crucial to reiterate, however, that although similar, the Supreme Court has demonstrated that Jones Act negligence and unseaworthiness are "separate and distinct" claims with different elements and standards of causation. *Chisholm*, 679 F.2d at 62 (citation omitted); *see also Usner*, 400 U.S. at 498; *Brunner*, 779 F.2d at 298. Plaintiffs often bring claims for both causes of action, and the same act that results in liability for one will often result in liability for the other, but that is a common feature of the law. Relatedly, Estis argues that it would make little sense to permit the recovery of punitive damages for unseaworthiness, which imposes liability without regard to fault, while denying such relief on a Jones Act claim, which requires a finding of negligence. *See Merry Shipping*, 650 F.2d at 626. This argument especially overlooks that punitive damages recovery always requires a high culpability finding of willful and wanton conduct, whether the cause of action is for maintenance and cure or unseaworthiness. *See id*; *see also Stowe v. Moran*

No. 12-30714

*Towing Corp.*, No. 13-0390, 2014 WL 247544, at *7 (E.D La. Jan. 22, 2014) (relying on *McBride* to note that "[o]f course, punitive damages are available as a remedy to seamen under the general maritime law claim of unseaworthiness" but dismissing the claim because the finding of willful and wanton conduct was "missing on this record").[99] Punitive damages differ in that way from other types of non-pecuniary damages, such as the loss of society damages addressed in *Miles*. In light of that distinction, we previously have rejected this argument against allowing punitive damages recovery under general maritime law. *Id.* ("It does not follow . . . that if punitive damages are not allowed under the Jones Act, they should also not be allowed under general maritime law [because] recovery of punitive damages is restricted to where there is willful and wanton misconduct, reflecting a reckless disregard for the safety of the crew, a much higher standard of culpability than that required for Jones Act liability."). The central concern of *Miles*—that it would be inappropriate to "sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence"—thus, is not present here. 498 U.S. at 32–33.

---

[99] To the extent that Estis argues that the availability of punitive damages is disruptive, it may be noted that (1) punitive damages were available under *Merry Shipping*, (2) punitive damages are the rule with respect to maintenance and cure, (3) the Supreme Court has rejected the argument that punitive damages unduly impact settlement negotiations, *see Baker*, 544 U.S. at 498 n.15 ("One might posit that ill effects of punitive damages are clearest not in actual awards but in the shadow that the punitive regime casts on settlement negotiations and other litigation decisions. But here again the data have not established a clear correlation. (internal citations omitted)), (4) courts can sanction parties if punitive damages are frivolously alleged, and, crucially, (5) Congress can always withdraw their availability.

No. 12-30714

2.

The Majority Opinion's emphasis on the deceased plaintiff in *Miles* risks the broadening error committed by the losing party in *Townsend*, corrected by the Supreme Court: "In *Miles*, petitioners argue, the Court limited recovery in maritime cases *involving death* or personal injury to the remedies available under the Jones Act and the Death on the High Seas Act (DOHSA)." *Townsend*, 557 U.S. at 418 (emphasis added). The Court explained that "[p]etitioners' reading of *Miles* is far too broad." But even accepting Estis's broad view that a case involving death is so limited, this reasoning would lose all force as applied to personal-injury plaintiffs raising unseaworthiness claims. As to them, *Townsend* applies straightforwardly: *Townsend* described the availability of punitive damages as a "general admiralty rule" applicable to "maritime claims," *id.* at 414-15, and no party has argued that the Jones Act addressed unseaworthiness, let alone that it excepted unseaworthiness from the general maritime rule.[100] *See e.g.*, *In re Asbestos Prods. Liab. Litig.*, MDL No.875, 2014 WL 3353044, at *2-11 (E.D. Pa. July 9, 2014) ("In sum, a general maritime claim of unseaworthiness can support a punitive damages award when brought directly by an injured seaman, but not when brought by a seaman's personal

---

[100] As discussed, *Townsend* stressed the default availability of punitive damages for general maritime causes of action, referring to this "rule" three times in one footnote:

> However, [the dissent] neglects to acknowledge that the general common-law rule made punitive damages available in maritime actions. Nor does the dissent explain why maintenance and cure actions should be excepted from this general rule. It is because of this rule, and the fact that these early cases support—rather than refute—its application to maintenance and cure actions, that the pre-Jones Act evidence supports the conclusion that punitive damages were available at common law where the denial of maintenance and cure involved wanton, willful, or outrageous conduct.

*Id.* at 414 n.4 (internal citations omitted).

representative as part of a wrongful death or survival action. Put simply, the remedy of punitive damages exists as it did prior to the passage of the Jones Act, and thus does not survive a seaman's death.").

Moreover, the Supreme Court in *Townsend* explained that its general rule applies undiminished even when a general maritime claim is, as the Majority Opinion writes, "joined with" or "predicated on" a Jones Act claim. Maj. Op. 2, 11. "The fact that, in some cases, a violation of the duty of maintenance and cure may also give rise to a Jones Act claim, is significant *only in* that it requires admiralty courts to ensure against double recovery." *Townsend*, 557 U.S. at 423 n.10 (emphasis added). Under the Majority Opinion's view, however, that an unseaworthiness claim is "joined with" a Jones Act claim is significant in another respect unidentified by the Supreme Court in *Townsend*: it precludes seamen from invoking the general maritime rule providing for punitive damages. Only by contravening *Townsend*'s established rule, then, can Estis offer its position, adopted by the Majority Opinion, that *Miles* forecloses the availability punitive damages in an unseaworthiness injury case. The Majority Opinion concludes otherwise because "no one has suggested why [*Miles*'s] holding and reasoning would not apply to an injury case." Maj. Op. 10. This analysis has no post-*Townsend* support and, instead contravenes the Supreme Court's instruction by inappropriately placing the burden on the seamen to demonstrate that the general maritime rule announced in *Townsend* has been extinguished. As the Supreme Court in *Townsend* instructed, the burden squarely is on Congress: "respondent is entitled to pursue punitive damages unless Congress has enacted legislation departing from this common-law understanding." *Townsend*, 557 U.S. at 415. Congressional silence therefore is oppositely

No. 12-30714

dispositive, and even under the Majority Opinion's broadened interpretation of *Miles*, reversal would be warranted as to the injured seamen, Suire and Touchet.

## CONCLUSION

Like maintenance and cure, unseaworthiness was established as a general maritime claim before the passage of the Jones Act, punitive damages were available under general maritime law, and the Jones Act does not address unseaworthiness or limit its remedies. I would conclude that punitive damages remain available to seamen as a remedy for the general maritime law claim of unseaworthiness until Congress says they do not. *See Townsend*, 557 U.S. 404.[101]

---

[101] Having so concluded, like the Supreme Court, I would decline to revisit whether punitive damages are available to seamen bringing claims for negligence under the Jones Act. *See Townsend*, 557 U.S. at 424 n.12 (declining to decide whether punitive damages are available to a seaman in a cause of action for negligence under the Jones Act after ruling that such damages are available to a seaman in a cause of action for maintenance and cure).

No. 12-30714

JAMES E. GRAVES, JR., Circuit Judge, dissenting, joined by DENNIS, Circuit Judge.

I join Judge Higginson's dissent in full, and fully agree with its reasoning and conclusions. I write in support and amplification of the dissent's observation that extending the *Miles* pecuniary damages limitation to the injured crew members in this case compounds the error in the majority opinion.

Even under the majority's view that *Miles v. Apex Marine*, 498 U.S. 19 (1990) is the controlling case, the majority extends *Miles* much too far. There are four plaintiffs in this case: Haleigh McBride, as administratrix of the estate of Skye Sonnier, a seaman who was killed in the accident, and Saul Touchet, Brian Suire, and Joshua Bourque, seamen who were injured in the accident. All four assert causes of action based on unseaworthiness under general maritime law and negligence under the Jones Act. The majority concludes that punitive damages are unavailable for all four of the plaintiffs because, under the *Miles* approach, recovery for death or injury predicated on the Jones Act or unseaworthiness is limited to "pecuniary" damages, and punitive damages are non-pecuniary.

However, read with its proper scope, the pecuniary damages limitation recognized in *Miles* applies only to the wrongful death causes of action brought by McBride. It does not apply to Touchet, Suire, and Bourque, who are seamen asserting Jones Act negligence and general maritime law unseaworthiness causes of action on their own behalf. The pecuniary damage limitation was created in the context of wrongful death statutes, and by statute, history and logic, it applies only to survivors asserting wrongful death claims. This distinction is inherent in the text of the Jones Act itself, which allows a survivor or personal representative to sue in wrongful death only if the seamen dies from the injury. 46 U.S.C § 30104; *see Sistrunk v. Circle Bar Drilling Co.*, 770 F.2d 455, 457 (5th Cir. 1985) (summarizing the actions available in

No. 12-30714

maritime death and injury cases). If the seaman survives, he must bring his own action, and the pecuniary damages limitation created by wrongful death statutes and case law should be inapplicable.

It is well-recognized that the original source of the pecuniary damages limitation in maritime law is the Federal Employee Liability Act (FELA), which was incorporated into the Jones Act at its passage. *Miles*, 498 U.S. at 32. However, the FELA limitation of recovery to "pecuniary" damages originally applied only to survivors bringing wrongful death claims, and did not apply to plaintiffs asserting claims for their own injury. In *Michigan Central R. Co. v. Vreeland*, 227 U.S. 59 (1913), the Supreme Court explained that the language of FELA is "essentially identical" to the first wrongful death statute, Lord Campbell's Act, 9 & 10 Vict. ch. 93 (1846), which did not explicitly limit available damages, "but that Act and the many state statutes that followed it consistently had been interpreted as providing recovery only for pecuniary loss." *Miles*, 498 U.S. at 32; *Vreeland*, 227 U.S. at 69-71. The *Miles* Court stated that "[w]hen Congress passed the Jones Act, the *Vreeland* gloss on FELA, and the hoary tradition behind it, were well established. Incorporating FELA unaltered into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well." *Miles*, 498 U.S. at 32. The majority, however, misinterprets the scope of the pecuniary damages limitation recognized in *Miles*, and historically recognized in FELA and Jones Act cases.

Supreme Court case law discussing FELA and the Jones Act show that the statutory limitation of recovery to "pecuniary" damages applies only to wrongful death claims brought by survivors. Prior to the passage of the Jones Act in 1920, the Supreme Court repeatedly held that FELA's pecuniary damages limitation applied to survivors asserting wrongful death claims, and distinguished those claims from claims brought by injured employees

No. 12-30714

themselves.  In *Vreeland*, the Court explained that the FELA wrongful death cause of action

> is independent of any cause of action which the decedent had, and includes no damages which he might have recovered for his injury if he had survived.  It is one beyond that which the decedent had,— one proceeding upon altogether different principles.  It is a liability for the loss and damage sustained by relatives dependent upon the decedent.  It is therefore a liability for the pecuniary damage resulting to them, and for that only.

227 U.S. at 69.  In *St. Louis, I.M. & S. Ry. Co. v. Craft,* the Court again distinguished between the employee's own rights and that of his survivors. The Court explained that FELA

> invests the injured employee with a right to such damages as will compensate him for his personal loss and suffering,—a right which arises only where his injuries are not immediately fatal. And where his injuries prove fatal, either immediately or subsequently, it invests his personal representative, as a trustee for designated relatives, with a right to such damages as will compensate the latter for any pecuniary loss which they sustain by the death.

237 U.S. 648, 656 (1915) (internal citation omitted) (citing *Vreeland*, 227 U.S. at 68; *Louisville, E. & St. L. R. Co. v. Clarke*, 152 U.S. 230, 238 (1894)); *see also Gulf, C. & S.F. Ry. Co. v. McGinnis*, 228 U.S. 173, 175-76 (1913).  In *Van Beeck v. Sabine Towing Co.*, the Court adopted this same proposition under the Jones Act.  The Court explained that under FELA, as incorporated by the Jones Act,

> the personal representative does not step into the shoes of the employee, recovering the damages that would have been his if he had lived.  On the contrary, by section 1 of the statute a new cause of action is created for the benefit of survivors or dependents of designated classes, the recovery being limited to the losses sustained by them as contrasted with any losses sustained by the decedent.

300 U.S. 342, 346 (1937). The *Van Beeck* Court went on to explain the effect of an amendment to FELA, which provided that the decedent's own claims, including for pain and suffering, survived his death:

No. 12-30714

However, with the adoption of an amendment in 1910, a new aspect of the statute emerges into view. Section 2 as then enacted continues any cause of action belonging to the decedent, without abrogating or diminishing the then existing cause of action for the use of his survivors. Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One is for the wrong to the injured person, and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries, and is confined to their pecuniary loss through his death.

*Id.* at 347 (citations and internal quotation omitted). [1]

These cases make it exceedingly clear that, at the time the Jones Act was passed, wrongful death claims that could be brought by a survivor were distinguished from an employee's own claims for his own injuries under FELA, and the pecuniary damages limitation applied only to the former. *See Van Beeck,* 300 U.S. at 346-47; *St. Louis, I.M.*, 237 U.S. at 656; *Vreeland,* 227 U.S. at 69-71; *see also Cook v. Ross Island Sand & Gravel Co.*, 626 F.2d 746, 749 (9th Cir. 1980) ("Yet, while the Jones Act arguably may apply a pecuniary loss

---

[1] In *Ivy v. Sec. Barge Lines, Inc.*, this court stated: "In the 66 years since the Vreeland decision, its principle that recovery under the F.E.L.A. is limited to pecuniary damages has remained a constant roadbed for railway workers suits. The same principle has uniformly been adopted with respect to Jones Act death action." 606 F.2d 524, 526 (5th Cir. 1979) (en banc). Every single case cited for these propositions in *Ivy* is a wrongful death action brought by survivors, in the FELA context, *id.* at 526 n.4 (citing *Chesapeake & O. Ry. Co. v. Kelly*, 241 U.S. 485, 487 (1916); *Am. R. Co. of Porto Rico v. Didricksen*, 227 U.S. 145, 149 (1913); *Stark v. Chicago, N. Shore & Milwaukee Ry. Co.*, 203 F.2d 786, 788 (7th Cir. 1953); *Mobile & O.R. Co. v. Williams*, 129 So. 60, 66 (Ala. 1930); *Atl. Coast Line R. Co. v. Daugherty*, 157 S.E.2d 880, 888 (Ga. 1967); *Simmons v. Louisiana Ry. & Nav. Co.*, 96 So. 12 (La. 1923); *Torchia v. Burlington N., Inc.*, 568 P.2d 558, 565 (Mont. 1977)), and in the Jones Act context, *id.* at 526 n.5 (citing *In re of M/V Elaine Jones*, 480 F.2d 11, 31 (5th Cir. 1973); *Cities Serv. Oil Co. v. Launey*, 403 F.2d 537, 540 (5th Cir. 1968); *Igneri v. Cie. de Transports Oceaniques*, 323 F.2d 257, 266 (2d Cir. 1963); *Sabine Towing Co. v. Brennan*, 85 F.2d 478, 481 (5th Cir. 1936) *rev'd sub nom. Van Beeck v. Sabine Towing Co.*, 300 U.S. 342 (1937); *United States v. Boykin*, 49 F.2d 762, 763 (5th Cir. 1931); *Thompson v. Offshore Co.*, 440 F. Supp. 752, 762 (S.D. Tex. 1977); *In re of Risdal & Anderson, Inc.*, 291 F. Supp. 353, 358 (D. Mass. 1968); *In re of S. S S Co.*, 135 F. Supp. 358, 360 (D. Del. 1955); *Am. Barge Line Co. v. Leatherman's Adm'x*, 206 S.W.2d 955, 957 (Ky. 1947); *Standard Products, Inc. v. Patterson*, 317 So. 2d 376, 378 (Miss. 1975)).

No. 12-30714

restriction to the personal losses of a decedent's beneficiaries, the Act does not apply a pecuniary loss restriction to the injuries of a decedent himself."); *Deal v. A.P. Bell Fish Co.*, 728 F.2d 717, 718 (5th Cir. 1984) (citing *Cook* for the proposition that "the pain and suffering of a drowning seaman is a compensable injury in a wrongful death action under the Jones Act").

Likewise, *Miles* is solely a wrongful death case, and its recognition of a pecuniary damage limitation applies to survivors asserting wrongful death claims. *Miles* itself explained that the plaintiff could not recover loss of society because "[t]he Jones Act applies *when a seaman has been killed* as a result of negligence, and it limits recovery to pecuniary loss." *Miles*, 498 U.S. at 32 (emphasis added). Indeed, all of the reasoning in *Miles* is applicable to survivors bringing wrongful death actions, rather than injured seamen seeking recovery for their own injuries. The *Townsend* Court's discussion of *Miles* makes this clear.

> The Court in *Miles* first concluded that the "unanimous legislative judgment behind the Jones Act, DOHSA, and the many state statutes" authorizing *maritime wrongful-death actions*, supported the recognition of a general maritime action for wrongful death of a seaman. Congress had chosen to limit, however, the damages available for *wrongful-death actions* under the Jones Act and DOHSA, such that damages were not statutorily available for loss of society or lost future earnings. The Court thus concluded that Congress' judgment must control the availability of remedies *for wrongful-death actions* brought under general maritime law.

*Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 419 (2009) (citations omitted and emphases added) (quoting *Miles*, 498 U.S. at 24). This is logical, at least pre-*Townsend*, given that the wrongful death cause of action was originally a creation of statutes that have long been read to limit survivors' recovery to their pecuniary losses. *See Miles*, 498 U.S. at 32; *Vreeland*, 227 U.S. at 69-71. But *Miles* says nothing indicating that it intended to recognize a pecuniary

No. 12-30714

damage limitation that applies more broadly than the pre-Jones Act FELA limitation.

There is no similar statute, history, or logic limiting seamen's own recovery to their pecuniary losses. No authority indicates that when the Jones Act incorporated FELA, it expanded the pecuniary damage limitation to injured seamen asserting their own claims for their own injuries. Indeed, with this law as background, the *Miles* Court's recognition that "Incorporating FELA unaltered into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well," *Miles*, 498 U.S. at 32, means something far more limited than the majority recognizes.[2]

The contrast between the limited "pecuniary" damages that, under the majority's approach, are recoverable in wrongful death actions under FELA and the Jones Act, and the categories of damages that have always been available to seamen, further reveals the error in the majority opinion. The majority briefly implies that "pecuniary" damages are broadly equivalent to "compensatory" damages, which allows the opinion to reason that the pecuniary damage limitation bars recovery of non-pecuniary punitive damages. Although some courts have in the past sporadically discussed them as if they are coextensive, *see Kozar v. Chesapeake & O. Ry. Co.*, 449 F.2d 1238, 1243 (6th Cir. 1971), the relevant statutes and case law, including *Miles* itself,

---

[2] The majority opinion cites only *Murray v. Anthony J. Bertucci Const. Co., Inc.*, 958 F.2d 127 (5th Cir. 1992), as justification for extending the Miles pecuniary damages to an injury case. But of course, in *Murray*, the court held that the spouse of an injured seaman could not recover for loss of society. *Id.* at 128; *but see Am. Exp. Lines, Inc. v. Alvez*, 446 U.S. 274, 276 (1980) (holding that spouse of longshoreman injured in territorial waters could recover loss of society in general maritime law action). That case may provide justification for limiting the recovery of a spouse or dependent in an injury case to pecuniary loss, but provides no justification for extending the pecuniary damage limitation to seamen seeking recovery for their own injuries.

do not conflate pecuniary damages with compensatory damages. Instead, "pecuniary" damages are understood to be far narrower.

*Miles* adopted the Death on the High Seas Act (DOHSA) limitation of damages to "pecuniary loss sustained by the persons for whose benefit suit is brought." *Miles*, 498 U.S. at 31; *see also Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 620 (1978). Both *Miles* and *Higginbotham* considered claims for loss of society damages brought by survivors in statutory wrongful death actions, and denied recovery because loss of society damages are non-pecuniary. *Miles*, 498 U.S. at 31-32; *Higginbotham*, 436 U.S. at 623-24. However, neither case provides a definition of "pecuniary," beyond excluding loss of society. DOHSA restricts recovery to "a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought." *Higginbotham*, 436 U.S. at 620; 46 U.S.C. § 30303. This DOHSA limitation, however, applies only to "the decedent's spouse, parent, child, or dependent relative." 46 U.S.C. § 30302; *see Bodden v. Am. Offshore, Inc.*, 681 F.2d 319, 331 (5th Cir. 1982) (explaining that DOHSA "apportions recovery of fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought, and that those injuries are "unique to the decedent's dependents and could not accrue until the decedent's death"). The statute does not provide that the pecuniary loss is equivalent to "fair and just" compensation for all losses, but merely provides for compensation for "pecuniary" losses in an action brought by a decedent's specified beneficiaries. 46 U.S.C. § 30303; *see Higginbotham*, 436 U.S. at 623 (noting that DOHSA "has limited survivors to recovery of *their* pecuniary losses" (emphasis added)); *see also Dooley v. Korean Air Lines Co., Ltd.*, 524 U.S. 116, 123 (1998) (explaining that DOHSA "authorize[es] only certain surviving relatives to recover damages," and "limit[s] damages to the pecuniary losses sustained by those relatives").

No. 12-30714

Similarly, *Vreeland*—which again is the original source of the FELA limitation of recovery to pecuniary damages—defined "pecuniary" damages far more narrowly than the majority does, explaining that

> A pecuniary loss or damage must be one which can be measured by some standard. It is a term employed judicially, not only to express the character of that loss to the beneficial plaintiffs which is the foundation of their right of recovery, but also to discriminate between a material loss which is susceptible of a pecuniary valuation, and that inestimable loss of the society and companionship of the deceased relative upon which, in the nature of things, it is not possible to set a pecuniary valuation.

227 U.S. at 71 (citation and quotation omitted). This understanding of "pecuniary" damages refers to whether a relative's or beneficiary's loss itself is a financial one that is estimable in monetary terms. In light of *Vreeland's* recognition that this pecuniary damage limitation applied only to survivors, *id.* at 68, this narrow definition is also quite logical. The survivors in *Miles* and *Higginbotham* could not recover loss of society because loss of society, unlike loss of support, is not primarily a financial loss. *Miles*, 498 U.S. at 31; *Higginbotham*, 436 U.S. at 623. With respect to survivors' own recovery, the law had chosen to draw a line between monetary losses and other, more intangible losses. *See Vreeland*, 227 U.S. at 71.

It seems illogical that this principle would be extended to injured seamen seeking recovery for their own injuries. For example, pain and suffering is not a financial loss and is difficult to reduce to a monetary amount; thus it is not a pecuniary damage according to the definition incorporated into FELA. *See id.* Yet there can be no question that injured seamen can seek recovery for their own pain and suffering under the Jones Act and the general maritime law. *E.g., Douse v. Global Pipelines Plus*, 253 F. App'x 342 (5th Cir. 2007) (in Jones Act case, agreeing that injured seamen properly recovered "maintenance and cure through the present, future maintenance and cure, past and future pain

and suffering, and past and future economic losses"); *Deal*, 728 F.2d at 718; *Crador v. Louisiana Dep't of Highways*, 625 F.2d 1227, 1230 (5th Cir. 1980) (noting that in Jones Act case, "In addition to loss of income the jury could award damages for pain and suffering and impact on one's normal life routines."). Indeed, in *Miles* itself, the plaintiff estate recovered for the pre-death pain and suffering of the decedent seamen. *Miles*, 498 U.S. at 22. By contrast, if we accept the majority's unexplained implication that pecuniary damages must be equivalent to compensatory damages, it is not clear why loss of society would not have been recoverable in *Miles* or *Higginbotham*, as it is not at all clear why loss of society damages are any less compensatory in nature than damages for pain and suffering. *See Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 586 (1974) (noting that "[u]nquestionably, the deprivation of [society] by wrongful death is a grave loss to the decedent's dependents," and that the case law which barred recovery for loss of society did so on the basis of it being non-pecuniary). When loss of society is not recoverable in wrongful death actions, it is because it is non-pecuniary, not because it is not compensatory. *See id*.

The original view of the pecuniary damages limitation expressed in cases like *Vreeland* must be understood as the definition incorporated into the Jones Act and accepted by the *Miles* Court. *See Miles*, 498 U.S. at 31-32. Thus, even if the *Miles* analysis is applied in this case, *Miles's* recognition of FELA's pecuniary damage limitation is simply adherence to this case law distinguishing between a survivor's wrongful death claims and ability to recover and the rights and recovery of an injured employee or seaman himself.

There is no justification for applying the pecuniary damage limitation, a creature of wrongful death statutes and case law, to injured seamen seeking recovery for their own injuries. Even if the pecuniary damage limitation is applicable in this case, it must apply only to McBride, a survivor of a decedent

No. 12-30714

seaman asserting wrongful death claims, and not to Touchet, Suire, and Bourque, who assert unseaworthiness and Jones Act claims based on their own injuries. With *Miles*'s pecuniary damage limitation inapplicable to the injured seamen, the dissent's *Townsend*-based approach is the correct analysis of the availability of punitive damages for Touchet, Suire, and Bourque.